# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————————

KRISTINA MARTINEZ, as Personal Representative
of the ESTATE OF DALE RAND ERICKSON,
deceased, LUCILLE HIGGINS, BRANDON
ERICKSON, MATTHEW ERICKSON,
JONATHAN ERICKSON, and BRIANNA
ERICKSON,

      Plaintiffs,

vs.                            No.  1:22-cv-00288-WJ-SCY

CORRHEALTH, PROFESSIONAL LIMITED
LIABILITY COMPANY d/b/a CORRHEALTH,
LLC, a foreign limited liability company,
BRUCE BOYNTON, MD,
BARRY SCHOOLEY-STANFORD, MSN, FNP-C,
OAKLEY BLASDEL, RN,
KIMBERLY RICH-GAINEY, RN, and
MYRA MARTINEZ, LPN, in their individual
capacities as employees of CorrHealth, Professional
Limited Liability Company d/b/a CorrHealth, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER RULING ON MOTIONS TO EXCLUDE EXPERT TESTIMONY and DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and PLAINTIFFS' MOTION FOR SANCTIONS

**THIS MATTER** comes before the Court on the following motions filed by Defendant

CorrHealth, Professional Limited Liability Company ("CorrHealth"), and the individually named

Defendants:

- Motion to Exclude or Limit Testimony of Plaintiffs' Experts Regarding Nursing Standard of Care, filed May 5, 2023 (**Doc. 66**). The Court finds that this motion is not well-taken and is therefore **DENIED**.

- Motion for Partial Summary Judgment, filed May 5, 2023 (**Doc. 65**). The Court finds that this motion is not well-taken and is therefore **DENIED**.

1

The Court has also considered the following motions filed by Plaintiffs:

- Motion to Exclude or Limit Testimony of Defendants' Experts, filed May 5, 2023 (**Doc. 67**). The Court finds that this motion is well-taken and is therefore **GRANTED IN PART**.

- Motion to Prohibit Defendants from Introducing Designated Matters in Evidence, to Overrule Objections as Untimely, and for Further Sanctions, filed April 24, 2023 (**Doc. 64**). The Court **RESERVES RULING** on this motion and **ORDERS** supplemental briefing.

## BACKGROUND

This case arises out of allegations involving inadequate medical care by Defendant CorrHealth and its employees to Mr. Dale Erickson while he was an inmate at Sandoval County Detention Center ("SCDC"). Between March 20–23, 2019, Mr. Erickson had numerous interactions with CorrHealth medical personnel. On March 22, 2019, Mr. Erickson was brought to the medical unit. The next day, Mr. Erickson died of acute hemorrhagic pancreatitis. Ultimately, this is both a jail death case and a medical negligence case[1]. Plaintiffs bring suit against Defendant CorrHealth and the individually named Defendants for medical negligence resulting in Mr. Erickson's wrongful death. *See* **Doc. 1-2 (Amended Complaint)**.

A summary of the pertinent facts is detailed below.[2] Mr. Erickson was arrested on March 20, 2019, and brought to SCDC. **Doc. 65 at UMF ¶ 1**. After booking, Defendant Martinez filled out an intake screening form for Mr. Erickson. *Id.* **at UMF ¶ 2**. Mr. Erickson reported his medical history of "congestive heart failure, hypertension, and gastroesophageal reflux disease (GERD)" to Defendant Martinez. *Id.* **at UMF ¶ 3**. Mr. Erickson was placed on alcohol withdrawal protocols

---

[1] Plaintiffs' Amended Complaint (**Doc. 1-2**) alleges civil rights violations, wrongful death, and loss of consortium.

[2] Of note, the Court bases its factual discussion of the case on the undisputed facts in the Motion for Summary Judgment (**Doc. 65**) and the Plaintiffs' Response (**Doc. 74**). For ease of reading, this section does not contain citations to the exhibits supporting the undisputed material facts, but instead references the pleadings. For the full Statement of Undisputed Material Facts ("UMF") and Plaintiffs' Statement of Facts ("SOF") as well as the underlying exhibits, *see* **Docs. 65, 74, 81**.

("CIWA"). *Id.* **at UMF ¶ 4**. Mr. Erickson was assessed several times—but there is a factual dispute regarding appropriate compliance with procedures, the accuracy of the forms, and the conclusion that he "did not exhibit signs or symptoms of withdrawal." *Id.* **at UMF ¶ 5; Doc. 74 at SOF ¶ 5**. On March 22, 2019, Mr. Erickson was brought to the medical unit—but the underlying complaint is disputed. *Compare* **id.** **at UMF ¶ 6** (citing "difficulty urinating"), *with* **Doc. 74 at SOF ¶ 6** (citing "abdominal pain"). Defendant Martinez then contacted Defendant Schooley-Stanford. *Id.* **at UMF ¶ 7**.

CorrHealth nursing personnels' attempts to perform CIWA assessments of Mr. Erickson on March 22–23, 2019, are disputed. *Id.* **at UMF ¶ 8; Doc. 74 at SOF ¶ 8**. Here, after construing the facts in the light most favorable to the nonmovant, the Court is convinced that Plaintiffs provided sufficient evidence to contest UMF ¶ 8 regarding Mr. Erickson's alleged CIWA refusal. *See* **Doc. 74 at 9–11** (citing evidence). Mr. Erickson interacted with medical personnel on several occasions, but a dispute exists regarding whether he complained of abdominal pain. *Id.* **at UMF ¶ 9; Doc. 74 at SOF ¶ 9; Doc. 73-6**. This material fact is disputed. For the same reasons, the Court finds that a genuine dispute exists as to UMF ¶ 9.

On the morning of March 23, 2019, Mr. Erickson was found unresponsive in the shower area and was pronounced dead. *Id.* **at UMF ¶ 10**. Although Plaintiff "disputes" UMF ¶ 10, they are only nitpicking semantics. **Doc. 74 at SOF ¶ 10**. Mr. Erickson's autopsy cause of death was "acute hemorrhagic pancreatitis." *Id.* **at UMF ¶ 11**. The autopsy also lists "recent methamphetamine use" and "therapy-induced coagulopathy" as significant contributory conditions. *Id*. The manner of death is listed as "accident." *Id*. Plaintiffs dispute the legal implications associated with the findings—but there is no disputed material fact (only argument). **Doc. 74 at SOF ¶ 11**.

The final material fact relevant to resolving the motion for partial summary judgment is that Plaintiffs disclosed Dr. Anna Vertkin (gastroenterologist) and Dr. Susan Tiona (corrections physician) in their Fed. R. Civ. P. 26(a)(2) expert disclosures. **Doc. 65 at UMF ¶ 28**. The outstanding facts (numbers 12 through 33) pertain to a battle of experts. **Docs. 65 & 74**.

## DISCUSSION

### I. The Motions to Exclude Expert Testimony and Opinions

Pursuant to Fed. R. Evid. 702, Defendants' challenge Plaintiffs' experts regarding their veracity to testify as to the nursing standard of care. **Doc. 66 at 2**. Plaintiffs' also challenge the Defendants' experts contending that their reports, testimony, and opinions are not those of an expert, will not help the jury determine a fact in issue, and are impermissible "play by play" commentary. **Doc. 67, *passim***. Additionally, Plaintiffs submit that the Defendants should not be allowed to supplement their expert disclosures per Fed. R. Civ. P. 26(a)(2).

### A. Legal standard

Rule 702 governs the admissibility of expert testimony. The proponent of expert testimony has the burden to show by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009); *see also Andrews v. United States Steel Corp.*, 2011-NMCA-032, ¶ 14, 149 N.M. 461, 250 P.3d 887 (N.M. Ct. App. 2011); Rule 11-702 NMRA. Under Rule 702, relevancy remains a "touchstone[] of the admissibility of expert testimony." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 599 (1993).

The Court will address in turn whether Plaintiffs' and Defendants' experts are qualified, whether their opinions are reliable, and to what extent their proposed opinions are relevant.

**B. The noticed experts are qualified to provide expert testimony**

As a threshold matter, the Court agrees that all the experts are qualified "by knowledge, skill, experience, training, or education" to testify in the form of an opinion. Fed. R. Evid. 702; *see also LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Here, the parties have demonstrated their experts possess "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999). In total, there are five expert witnesses: (1) Dr. Charles A. Fox, M.D., (2) Renee Dahring, APRN, (3) Dr. C. Hsien Chiang, M.D., (4) Dr. Susan Tiona, M.D., and (5) Dr. Anna Vertkin, M.D. **Docs. 42 & 48**.

**1. Defendants' expert witnesses**

Dr. Charles A. Fox, M.D., is a medical doctor who is board certified in gastroenterology and hepatology. **Doc. 67-2**. Since 2005, Dr. Fox has been a partner at Atlanta Gastroenterology Associates as well as the department head of gastroenterology at Emory University Hospital. *Id*. Consistent with his education, experience, and training, Dr. Fox is familiar with acute pancreatitis. Accordingly, the Court finds Dr. Fox is qualified to render an expert opinion in this case.

Renee Dahring is an advanced practice registered nurse (APRN) and a board-certified family nurse practitioner (NP). **Doc. 67-3**. Nurse Dahring has over twenty years' experience in providing nursing care in correctional settings. *Id*. Nurse Dahring conducts clinical hours for inmates and is a correctional health professional. Her opinion testimony regarding the standard of care for corrections nurses is clearly relevant. Based on her knowledge and experience, the Court finds Nurse Dahring is qualified to render an expert opinion in this case.

Dr. C. Hsien Chiang, M.D., is a medical doctor who is board certified in family medicine and addiction medicine. **Doc. 67-1**. Relevant here, Dr. Chiang serves as a medical director for the Orange County jail system. *Id.* Dr. Chiang is clearly qualified to provide an expert opinion based on his credentials and qualifications.

**2. Plaintiffs' expert witnesses**[3]

The Court finds Dr. Susan M. Tiona, M.D., qualified to render her proposed expert opinion in this case. Dr. Tiona's proposed opinion testimony is based on nearly two decades of training, education, and experience in the medical field. Specifically relevant here, Dr. Tiona has served as a facility physician with the Colorado Department of Corrections, the Kit Carson Correctional Center, and served as the Chief Medical Officer for the Colorado Department of Corrections. **Docs. 66-7 & 67-4**. In these roles, she has worked with, collaborated with, and supervised nursing staff and is intimately familiar with the professional standards, guidelines, protocols, and standards of care for all medical staff members. **Docs. 66-6 & 67-4**. Dr. Tiona's testimony will assist the jury in evaluating evidence related to Defendants' response to Mr. Erickson's complaints, CIWA treatment protocols, causation, and the appropriate standard of care.

The Court also finds Dr. Anna F. Vertkin, M.D., qualified to render her proposed expert opinion in this case. Dr. Vertkin's proposed opinion testimony is based on over thirty years of training, education, and experience in the medical field. Specifically, Dr. Vertkin has been an internal medicine board certified gastroenterologist for thirty years. **Doc. 66-5**. In her career, she has treated thousands of patients with acute pancreatitis. **Doc. 74 at 8**. Dr. Vertkin's testimony will assist the jury in evaluating evidence related to acute pancreatitis (such as symptoms, diagnosis,

---

[3] Defendants did not challenge Plaintiffs' experts "as to medical causation" or "the standard of care for correctional physicians." **Doc. 65 at 3 n.1; Doc. 66 at 2 n.1**. The only dispute revolves around the standard of care by the nurses.

and treatment) as well as Defendants' response to Mr. Erickson's complaints, causation, and the appropriate standard of care.

## C. The reliability of the proffered testimony of the witnesses

Having reviewed the reports and exhibits, the Court finds that Dr. Vertkin and Dr. Tiona's findings and opinions recount both the standard of care and causation—essential elements in the state law claims. Under the standard of Rule 702, the Court finds that the expert testimony and opinions of Plaintiffs' experts are admissible. Together, Plaintiffs' experts have the qualifications to opine about the standard of care for diagnosing and treating pancreatitis in a living patient as well as the standard of care for treating inmates in a detention facility. **Doc. 67 at 2**.

Neither federal law[4] governing the admissibility of expert testimony nor New Mexico law governing the competency of medical witnesses supports a rule that a physician cannot be qualified to opine as to the sufficiency of medical care provided by nursing staff. Plaintiffs' experts are qualified to testify on the standard of care despite not being nurses. **Doc. 66 at 2–5; Doc. 65**. In fact, New Mexico law does not require a testifying medical expert to practice in the same area of practice that is at issue. *Cayaditto v. United States*, No. CIV-04-1261, 2006 U.S. Dist. LEXIS 117364, at *6 (D.N.M. Jan. 5, 2006) (citing *Vigil v. Miners Colfax Med. Ctr.*, 1994-NMCA-054, 117 N.M. 665, 875 P.2d, 1096, 1101 (N.M. Ct. App. 1994)); *see also LeBlanc v. N. Colfax Cnty.*

---

[4] Several circuits have addressed this exact issue and found a doctor was qualified to testify regarding a nurse's standard of care. *See McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004) ("A physician's area of expertise necessarily encompasses the standard of care applicable to nurses."); *Gayton v. McCoy*, 593 F.3d 610, 618 (7th Cir. 2010) (finding a physician was qualified to opine on nursing standards of care); *Rodríguez-Valentin v. Drs.' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14 (1st Cir. 2022) (same); *see also Le Maire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987) (permitting a doctor to opine that the "physicians did not deviate from the standard of care," nor did the nurses). Likewise, many district courts have come to the same conclusion. *See Nicholson v. Evangelical Lutheran Good Samaritan Soc'y, Inc.*, No. 16-0164, 2017 U.S. Dist. LEXIS 113677 (D.N.M. July 21, 2017) (permitting a doctor to testify about nursing staff's standard of care); *Sanford v. Stewart*, No. 11-cv-2360, 2013 U.S. Dist. LEXIS 97614, at *3 (N.D. Ohio July 12, 2013) (holding a doctor is qualified to opine on actions of nursing staff); *Oakley v. Hudson*, No. 13-cv-102, 2014 U.S. Dist. LEXIS 172660, at *3–4 (S.D. Tex. Dec. 15, 2014) ("A physician's area of expertise ordinarily encompasses the standard of care applicable to nurses."); *Gomez v. Palmer*, No. 11-cv-1793, 2016 U.S. Dist. LEXIS 5812, at *10–11 (N.D. Ill. Jan. 19, 2016) (finding a doctor qualified to opine on treatment provided by nurses in prison setting where doctor had experience working with licensed practical nurses).

*Hosp.*, 1983-NMCA-128, ¶ 9, 100 N.M. 494, 672 P.2d 667 (N.M. Ct. App. 1983) (permitting a doctor to discuss a nurse's failure to adhere to the standard of care); *cf.* Rule 11-702 NMRA; UJI 13-1101 NMRA; 13-1102 NMRA.

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory comm. n. In this case, Dr. Tiona has worked closely with nurses throughout her career and is familiar with their standards of care set forth by the American Correctional Association and the National Commission on Correctional Health Care. **Docs. 67-4, 65-8, 65-9, 66-7**. To the extent Dr. Tiona is a medical doctor and not a nurse, this goes to the weight to be given to her testimony and not whether such testimony is admissible. *Sewell v. Wilson*, 1982-NMCA-017, ¶ 23, 97 N.M. 523, 641 P.2d 1070 (N.M. Ct. App. 1982), *superseded by statute on other grounds*, ("[A] non-specialist can testify as to the standards of care owed by a defendant specialist, but only if the non-specialist is qualified and competent to do so."); *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 665 (10th Cir. 2013) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)).

The Court, therefore, **DENIES** Defendants' Motion (**Doc. 67**) to limit the testimony Plaintiffs' experts.

## D. The Court limits the scope of Defendants' expert testimony

A district court is not required to hold a *Daubert* hearing when neither party requests one—and it can perform its gatekeeping function on the basis of the pleadings. *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007). When ruling on motions to exclude or otherwise limit expert testimony, the Court is mindful that its role as gatekeeper is not intended to serve as a replacement for the adversary system. *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994).

Where the rubber meets the road, however, is with respect to the Defendants' experts' proffered testimony contained in the reports. Each witness can easily qualify as an expert under Rule 702, but the real question is "What are they an expert about?" *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). The Court is uncomfortable with Defendants' experts' proposed testimony. First, each expert is not opining based on their specialization, but are instead providing a play-by-play analysis of Defendant CorrHealth's version of events. Second, the experts appear to be a conduit for hearsay. And third, the experts' play-by-play analysis lends itself to opinions and conclusions that are not actually expert testimony. No expertise is needed to watch a video nor are any experts qualified to guess as to what Mr. Erickson said. **Doc. 67 at 5, 9, 13**. Testimony from the experts that amounts to nothing more than legal conclusions and credibility assessments are impermissible. *See generally United States v. Rodella*, No. 14-cr-2783, 2014 U.S. Dist. LEXIS 164773, at *77–87 (D.N.M. Nov. 19, 2014).

Dr. Fox may not testify to a "history of methamphetamine abuse" because he is not a toxicologist or forensic pathologist. This opinion is outside the scope of his expertise and lacks a proper evidentiary basis. Likewise, Dr. Fox may not opine that Mr. Erickson had a "history of medication non-compliance" because such a conclusion is counter to the evidence. There is "too great an analytical gap" between these snippets of Dr. Fox's proffered testimony and the factual basis. *Hoffman v. Ford Motor Co.*, 493 F. App'x 962, (10th Cir. 2012) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 991 (10th Cir. 2003) (explaining experts need not be certain in their opinions, but they cannot engage in mere "conjecture or speculation"). Finally, Dr. Fox cannot serve as a vehicle for inadmissible hearsay. *Williams v. Illinois*, 567 U.S. 50, 80 (2012); *United States v. Garcia*, 793

F.3d 1194, 1212 (10th Cir. 2015) ("[T]rial courts can screen out experts who would act as mere conduits for hearsay."); *TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732–33 (10th Cir. 1993).

Similarly, Nurse Dahring may not testify to what Mr. Erickson allegedly said to medical staff. Again, it is inappropriate for expert testimony to function as a conduit for hearsay in the absence of evidentiary support. *Garcia*, 793 F.3d at 1212. Additionally, Nurse Dahring may not testify that "there is reason to believe [SCDC]"—as that is the function of the jury. *See Lacy v. McArdle*, No. 20-cv-1014, 2023 U.S. Dist. LEXIS 123671, at *9–12 (W.D. Wis. July 18, 2023) (excluding Nurse Dahring's proffered expert testimony as conclusory when she opined Defendant "did not create any barriers to care," "did not ignore [Plaintiff]," and "responded in a timely manner"); *Rowland v. S. Health Partners*, No. 18-cv-00033, 2022 U.S. Dist. LEXIS 32433, at *13–14 (E.D. Ky. Feb. 23, 2022) (excluding, in part, Nurse Dahring's testimony that was "simply speculation"); *Olmstead v. Fentress Cnty.*, No. 16-cv-00046, 2019 U.S. Dist. LEXIS 61745, at *32–33 (M.D. Tenn. Apr. 10, 2019) (excluding Nurse Dahring's testimony for "extensive use of conclusory language and invocation of legal phrases"). To the extent Nurse Dahring's testimony would mirror her report that Defendants "did not create any barriers to care," "did not ignore [Plaintiff]," and "responded in a timely manner"—these are inadmissible as either legal conclusions or credibility assessments. Neither Nurse Dahring, nor any other expert, may "usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981); *see also United States v. Velarde*, 214 F.3d 1204, 1211 (10th Cir. 2000) ("[T]estimony which essentially simply vouches for the truthfulness of another witness is impermissible.").

Finally, Dr. Chiang's recitation of what the video recordings show is improper expert testimony. Dr. Chiang is not a forensic video examiner—and such testimony appears to be mere

speculation on what *he* sees or what he *assumes* was said by Mr. Erickson. *See Rowley v. Morant*, No. 10-cv-1182, 2014 U.S. Dist. LEXIS 186535, at *24–26 (D.N.M. Dec. 19, 2014) (disallowing expert testimony on video recordings where the proffered expert "merely viewed the recordings"). Such testimony "usurps the role of the jury." *United States v. Mendoza*, 236 F. App'x 371, 384 (10th Cir. 2007) (unpublished). The jurors are capable of viewing the images and assessing what is depicted. *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("Where expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact and it must be viewed as a needless presentation.") (cleaned up). Testifying about observations gleaned from reviewing three days' worth of video recordings is clearly outside the scope of a medical doctor's expertise. *See generally Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013) (explaining expert testimony must be "within the reasonable confines" of his expertise); *Ralston*, 275 F.3d at 970. Here, Dr. Chiang's testimony simply explains away abdominal pain without support rooted in reliable medical principles or methodology. *See Lujan v. Exide Techs.*, No. 10-4023, 2012 U.S. Dist. LEXIS 13893, at *52–53 (D. Kan. Feb. 6, 2012) (excluding a doctor's opinions based on reviewing video evidence as "unreliable"); **Doc. 67 at 15**. For this reason, such testimony by Dr. Chiang[5] is excluded.

In sum, the Defendants' experts are qualified in an abstract sense, but are not sufficiently qualified in the specific sense regarding the totality of their opinions as is required. *See Feltz v. Regalado*, No. 18-cv-0298, 2023 U.S. Dist. LEXIS 74636, at *13–14 (N.D. Okla. Mar. 16, 2023) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). Expert witnesses may not testify as to ultimate issues of law. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (en banc).

---

[5] *See NeSmith v. Cnty. of San Diego*, No. 15-cv-629, 2022 U.S. Dist. LEXIS 16349, at *30–31 (S.D. Cal. Jan. 28, 2022) (excluding Dr. Chiang's testimony regarding "inadmissible legal conclusion[s]").

Nor may an expert invade the province of the fact finder by testifying as to the weight and credibility of evidence. *Velez v. Metro. Life Ins. Co.*, 723 F.2d 7, 10 (10th Cir. 1983). Significant portions of the proffered testimony of Defendants' experts do exactly what is not allowed.

The Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Exclude (**Doc. 67**) the testimony of Defendants' retained experts. Dr. Chiang, Dr. Fox, and Nurse Dahring are not qualified to render expert opinions on the matters proscribed above. However, the experts may opine on gastroenterology, family medicine, nursing (both in and out of correctional settings), and applicable standards of care—to the extent such opinions are contained in their initial expert reports. **Docs. 67-1, 67-2, 67-3**.

## II. The Motion for Summary Judgment

Plaintiffs' claims against CorrHealth and the individually named Defendants are premised on negligence. *See* **Doc. 1-2 (Amended Complaint)**. The Motion for Summary Judgment (**Doc. 65**) claims that Plaintiffs failed to disclose an expert qualified to opine on nursing care—and, therefore, produced no evidence to support their claims (**Doc. 65 at 7–8 & 10–15**).

Plaintiffs' Response (**Doc. 74**) demonstrates genuine issues of material fact. *See supra* UMF ¶¶ 8–9. Plaintiffs' Response also submits that the Motion for Summary Judgment (**Doc. 65**) functions as a *Daubert* challenge in disguise. The Court declines the invitation to construe Defendants' motion as a *Daubert* challenge. Instead, the Court will limit its inquiry to whether Plaintiffs' evidence is sufficient to preclude summary judgment and send its claims to a jury.

## A. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if,

under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (explaining a genuine issue of fact is one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party").

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To carry this burden, the movant may simply point out the absence of evidence to support an essential element as to which the nonmovant bears the burden of proof at trial. *Libertarian Party of N.M. v. Herrera,* 506 F.3d 1303, 1309 (10th Cir. 2007). If the moving party meets its burden, then the burden shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant. *AlNahhas v. Robert Bosch Tool Corp.*, 706 F. App'x 920, 923 (10th Cir. 2017) (unpublished); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also Celotex Corp.*, 477 U.S. at 324 (explaining the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial). Ultimately, the Court must inquire as to whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. This case falls squarely into the former category.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court views the record in the light most favorable to Plaintiffs as the non-moving party and draws all reasonable inferences in their favor. *See Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019). At this stage, the Court simply determines whether there is a genuine issue for trial—but does not (and cannot) weigh the evidence and determine the truth of the matter. *See Anderson*, 477 U.S. at 243. Finally, the Court emphasizes that it is the role of the jury to assess witness credibility in deciding how to view testimonial evidence. *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1159 (10th Cir. 1992) (citation omitted).

## B. Summary judgment is not appropriate

Defendants argue they are entitled to summary judgment because Plaintiffs did not retain or disclose a "nursing standard of care expert." **Doc. 65 at 10**. This argument[6] misses the mark.

To state a claim for medical negligence under New Mexico law, Plaintiffs must establish the existence of a duty and a breach of that duty. This breach of duty requires proof of the standard of care. *See Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 (N.M. 2003); *Villalobos v. Bd. of Cnty. Comm'rs of Doña Ana Cnty.*, 2014-NMCA-044, 322 P.3d 439 (N.M. Ct. App. 2014). Negligence is a question of fact for the jury. *Schear v. Bd. of Cnty. Comm'rs of the Cnty. of Bernalillo*, 1984-NMSC-079, ¶ 4, 101 N.M. 671, 687 P.2d 728 (N.M. 1984). But whether a Defendant owed a duty to a Plaintiff is a question of law for the courts. *Solon v. WEK Drilling Co., Inc.*, 1992-NMSC-023, ¶ 17, 113 N.M. 566, 829 P.2d 645 (N.M. 1992) (citing *Bober v. N.M. State Fair Comm'rs of the Cnty. of Bernalillo*, 1991-NMSC-031, ¶ 17, 111 N.M. 644, 808 P.2d 614 (N.M. 1991)). Under New Mexico law, "expert testimony is needed to establish the

---

[6] To the extent Defendants also allege healthcare in a correctional facility is a medical specialty (**Doc. 65 at 12**), the Court is not persuaded. *See Jager v. Andrade-Barraza*, No. 18-cv-743, 2019 U.S. Dist. LEXIS 217396, at *31 (D.N.M. Dec. 18, 2019); *Anderson v. Columbia Cnty., Ga.*, No. CV-112-031, 2014 U.S. Dist. LEXIS 182827, at *10 (S.D. Ga. Mar. 31, 2014); *Boyer v. Shirley*, No. 18-cv-90, 2020 U.S. Dist. LEXIS 215758, at *18 (E.D. Ky. Nov. 18, 2020).

standard of care." *Villalobos*, 2014-NMCA-044, ¶ 1; *Lopez v. Sw. Cmty. Health Servs.*, 1992-NMCA-040, ¶ 13, 114 N.M. 2, 833 P.2d 1183 (N.M. Ct. App. 1992); UJI 13-1102 NMRA.

But, as mentioned earlier, neither federal law nor New Mexico prohibit a physician from opining as to the sufficiency of medical care—even if the medical care was provided by nursing staff. *See supra* ¶ I.C. Here, there are disputed facts—in addition to the dueling experts. To preclude summary judgment, these facts would have to allow a reasonable juror to return a verdict for Plaintiffs. In support of their Motion in Opposition to Summary Judgment (**Doc. 74**) Plaintiffs demonstrated the following:

CorrHealth states that its nursing personnel attempted to perform CIWA assessments of Mr. Erickson on March 22–23, 2019. **Doc. 65 at UMF ¶ 8; Doc. 74 at SOF ¶ 8**. To counter this, Plaintiffs lodged video recordings demonstrating that Mr. Erickson was not approached for several CIWA assessments. **Doc. 74 at SOF ¶ 8; Doc. 75**. Plaintiffs further demonstrated a question of fact as to the veracity of the CIWA forms—when comparing timestamps from the videos with the times noted on the assessment forms. *Id*. It is uncontroverted that Mr. Erickson interacted with medical personnel on several occasions. However, a material dispute exists regarding what he complained of—namely, difficulty urinating or abdominal pain. **Doc. 65 at UMF ¶ 9; Doc. 74 at SOF ¶ 9**. Given the conflicting evidence, the Court finds that a genuine dispute exists that should be presented to a jury.

The findings of the autopsy, admissible expert opinions of Dr. Tiona and Dr. Vertkin, as well as other evidence presented are sufficient to support Plaintiffs' proffered conclusion in the mind of a rational juror.

The Court finds there is a genuine dispute of material fact as to whether Defendants breached a duty of care owed to Mr. Erickson which caused his death. Contrary to Defendants'

arguments in their motion, the Court finds that Plaintiffs have gone beyond the pleadings and designated specific facts and evidence so as to create a material dispute of fact for resolution by the jury. *See Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007). Accordingly, the Court **DENIES** the Motion for Summary Judgment (**Doc. 65**).

### III. The Motion for Sanctions

Plaintiffs ask the Court to prohibit Defendants from introducing matters that were not timely disclosed in discovery, limit Defendants to their initial expert disclosures, and overrule Defendants' objections as untimely (**Doc. 64 at 1 & 13**).

On June 14, 2022, Magistrate Judge Yarbrough issued a scheduling order detailing case management deadlines and discovery parameters (the "Scheduling Order"). **Doc. 24**. The Scheduling Order imposed a September 26, 2022, deadline for Plaintiffs' Rule 26(a)(2) expert disclosures and a November 10, 2022, deadline for Defendants' expert disclosures. The Scheduling Order also imposed a discovery deadline of December 12, 2022. *Id.* **at 2**. On September 13, 2022, Judge Yarbrough issued an amended scheduling order extending the deadlines. **Doc. 40**. These deadlines were extended twice more. **Docs. 44 & 54**. Ultimately the discovery deadline was March 17, 2023. **Doc. 44 at 2**. The deadline for Plaintiff's expert disclosure was extended to October 21, 2022, and the deadline for Defendants' expert disclosure was extended from December 19, 2022. **Docs. 40 & 44**. The final discovery deadline (when accounting for completion of depositions) was March 31, 2023. **Docs. 24, 40, 44, 54**.

### A. Untimely objections

On April 5, 2023, Defendant CorrHealth objected to Plaintiffs' discovery requests. **Doc. 64 at 6 & 17–20**. These objections were untimely. **Doc. 64 at 17–20**. Failure to adhere to a scheduling order under Rule 16 may lend itself to sanctions. Fed. R. Civ. P. 16(f). The Rules do

not allow a party to wait until after the deadline to then state objections. *See* Fed. R. Civ. P. 33(b)(4). Additionally, to the extent Defendants object, their objections are boilerplate which is "tantamount to not making any objection at all." *United States ex rel. McGuinn v. J.L. Gray Co.*, No. 20-cv-31, 2022 U.S. Dist. LEXIS 53818, at \*10–11 (D.N.M. Mar. 24, 2022) (citing *Heuskin v. D&E Transp., LLC*, No. 19-cv-957, 2020 U.S. Dist. LEXIS 51644, at \*5 (D.N.M. Mar. 25, 2020)). Accordingly, Defendants' untimely and boilerplate objections are **STRIKEN**.

## B. Un-supplemented expert disclosures and untimely discovery supplementation

Witnesses who are retained or specifically employed to provide expert testimony must provide a written report prepared and signed by the expert witness, containing a complete statement of all opinions the witness will express and the basis and reasons for these opinions. Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) requires that parties must supplement their Rule 26(a)(2)(B) expert disclosures in accordance with the Court's scheduling order. *See* Fed. R. Civ. P. 26(a)(2)(E), (a)(3), and (e). Under the Rule, disclosure of testifying experts must be accompanied by a written report—prepared and signed by the witness, which "must contain . . . *a complete statement of all opinions* a witness will express *and the basis and reasons for them* . . . ." *AIG Aviation Ins. v. Avco Corp.*, No. 09-cv-352, 2011 U.S. Dist. LEXIS 169949, at \*2–3 (D.N.M. Mar. 14, 2011) (quoting Fed. R. Civ. P. 26(a)(2)(B)) (emphasis added).

Here, Defendants disclosed three retained experts by their deadline of December 19, 2022. **Docs. 44, 47, 48**. Based on those original disclosures and the absence of any supplementation, Plaintiffs elected not to depose Defendants' retained experts. **Doc. 64 at 15**; *see Leon v. FedEx Ground Package Sys., Inc.*, No. CIV-13-1005, 2016 U.S. Dist. LEXIS 38295, at \*39 n.4 (D.N.M. Mar. 1, 2016). To date, Defendants have not disclosed any supplemental[7] reports of their three

---

[7] Defendants' Motion for Summary Judgment (**Doc. 65**) included an affidavit from Nurse Dahring containing a new paragraph (number 12). *See* **Doc. 65-5 at 3**. This paragraph is **STRIKEN** in accordance with Rule 37(c)(1).

retained experts. **Doc. 64 at 15**. Rule 37(c)(1) states that a party is not allowed to use information or a witness to supply evidence when they fail to provide information as required by Rule 26. Accordingly, Plaintiffs asks the Court to sanction Defendants under Rule 37, specifically requesting: (1) Defendants be prohibited from supplementing their expert disclosures; and (2) Defendants be prohibited from introducing new evidence[8] through their experts that was not timely disclosed. *Id.*

A party's duty to fully disclose "all opinions" that an expert will offer at trial also includes a duty to supplement such disclosures. *See Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003). That being said, the duty to supplement "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Leviton Mfg. Co., Inc. v. Nicor, Inc*., 245 F.R.D. 524, 528 (D.N.M. 2007) (internal citations and quotations omitted). The Tenth Circuit has identified four factors a court should consider when deciding whether the failure to disclose an opinion is substantially justified or harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Considering this record as a whole, the Court finds that any untimely supplemental disclosures by Defendants would be an incurable surprise.[9] The original Rule 26(a)(2)(B) deadlines was November 10, 2022 (before it was extended until December 19, 2022). **Docs. 24, 40, 44**. The final discovery deadline in this case was March 31,

---

[8] On May 12, 2023, Defendant CorrHealth supplemented its discovery responses (**Docs. 69 & 70**). Defendants also provided an affidavit dated May 16, 2023 (**Doc. 74-11**) and supplemented RFPs (**Doc. 74-14**). This untimely evidence is also **STRIKEN** from consideration on Defendants' motions.

[9] The Court declines to make a finding that any new opinions would be disruptive to trial or that these new opinions were submitted in bad faith.

2023. Of note, the multiple deadline extensions are highly relevant when juxtaposed against the lack of a request for supplementing expert disclosures. Therefore, the Court will limit the testimony of Defendants' experts to the un-supplemented opinions in their initial disclosures. *See Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636 (D. Kan. 2001) (explaining a court may exclude supplemental or rebuttal expert testimony that is untimely); *cf.* Fed. R. Civ. P. 37(c)(1).

Despite the experts being properly listed on the notice of expert disclosure, eight months have passed since the close of discovery (and nearly a year since the deadline for the expert notice). Any expert disclosure supplementation this late would assuredly surprise and prejudice the Plaintiffs. Assuming Defendants seek such supplementation, it would be difficult to cure this prejudice—as addressing these late disclosures would involve increased costs to Plaintiffs as well as reopening[10] expired deadlines, which the Court does not view a viable option.

Clearly Defendants failed to timely supplement their expert opinion disclosures. To the extent any would-be testimony falls outside the scope of what is in the experts' initial reports, Defendants may not use their opinions in this case. *See* Fed. R. Civ. P. 37(c). *See* **Doc. 64 at 15**. Plaintiffs' request that the Court preclude: (1) any supplemental reports from Defendants' retained experts; (2) expert opinion testimony from treating physicians that falls outside the scope of the summaries that were disclosed on December 19, 2022; and (3) expert opinion testimony from new witnesses not timely identified in any Defendants' Rule 26(a)(2) expert disclosures is well taken and **GRANTED**.

## C. Spoliation of staffing and training records

A movant is not required to show bad faith in order to prevail on a request for spoliation sanctions. *103 Investors I, L.P. v. Square D. Co.*, 470 F.3d 985, 989 (10th Cir. 2006). A spoliation

---

[10] Reopening discovery would prejudice Plaintiffs by requiring expert discovery, expert depositions, amendments to the Plaintiffs' expert reports, and repetitive motions practice.

sanction is proper where: (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence. *Id*. Sanctions for spoliation serve three distinct remedial purposes: "punishment, accuracy, and compensation." *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1295 (D.N.M. 2016).

Here, Defendant CorrHealth admitted that its staffing and training records from March 2019 are "no longer available." **Doc. 74-14**. Specifically, Defendants' Response states that "CorrHealth only keeps these types of records . . . for up to 3 years." **Doc. 72 at 4**. As Plaintiffs point out, Defendant CorrHealth had a duty to preserve this evidence and was on notice of litigation since at least[11] May 27, 2021. **Doc. 64-1 at 3**. The records expired from internal retention in March 2022—at least ten months after Defendants were served the original complaint. **Doc. 64 at 2; Doc. 64-1; Doc. 83 at 3**. Defendants Response (**Doc. 72**) neglects to mention taking any reasonable steps to preserve its records—such as implementing a litigation hold. In a show of "good faith," Defendants concede that nonexistent documents "will not be used in any future motion or trial." **Doc. 72 at 5**. But the *use*[12] of these unfound documents is not the issue; instead, the prejudice stems from the fact that "[w]ithout the staffing and training records . . . there is no objective reference point" for Plaintiffs to hold the Defendants to answers regarding employment, schedules, or training. **Doc. 83 at 6–7**.

Is a jury instruction allowing an adverse inference appropriate? *See Henning v. Union Pac. Rail Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008). What about reopening discovery?[13] *Beck v. Baker*,

---

[11] Defendant CorrHealth was on notice that litigation was imminent "within weeks . . . [of] Mr. Erickson's death." **Doc. 83 at 3; Doc. 74-13; Doc. 74-5**.

[12] While conceding the "use" of the documents, Defendants argue they should not be barred from testifying about the records. **Doc. 72 at 5**.

[13] Although Plaintiffs reserved the opportunity to reopen discovery and allow for more deposition testimony at Defendant CorrHealth's expense (**Doc. 83 at 7**), the Court is unsure how this will cure the prejudice caused by Defendant CorrHealth's destruction of its staffing and training records.

No. 14-cv-67, 2016 U.S. Dist. LEXIS 105051, at *14 (D.N.M. Aug. 9, 2016). Or is the exclusion of witness testimony about this spoliated evidence proper? *103 Investors I, L.P.*, 470 F.3d at 988–89. The Court acknowledges the Tenth Circuit has stated the best practice for a district court is ruling on a motion for spoliation sanctions in the process of deciding summary judgment. *Helget v. City of Hays, Kan.*, 844 F.3d 1216, 1227 (10th Cir. 2017). In so doing, the Court has "substantial weaponry" in its arsenal under Rule 37 for dealing with spoliation sanctions. *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009). But at this time, the Court cannot determine whether the Defendants "acted with the intent to deprive another party of the information's use in the litigation." *EEOC v. JetStream Ground Servs.*, 878 F.3d 960, 966 (10th Cir. 2017) (quoting Fed. R. Civ. P. 37(e)(2)). Accordingly, reserving ruling on the spoliation sanctions is the most prudent course of action. But, in so doing, the Court orders supplemental briefing (and an evidentiary hearing if requested). Specifically, the Court requires supplemental briefing from the parties on the following issues:

(1) a chronology of CorrHealth's changes in HR software from 2019 to present;

(2) what steps, if any, Defendants took between March 2019 and May 2021 to preserve their staffing and training records;

(3) what steps, if any, Defendants took between May 2021 and March 2022 to preserve their staffing and training records;

(4) what steps, if any, Defendants took between May 2021 and March 2023 to comply with RFP Nos. 8 and 13 requesting the staffing and training records; and

(5) what sanctions, if any, are appropriate in this case?

The parties shall present the new information and any additional arguments to the Court in supplemental briefs with a maximum of five pages per brief, not including any exhibits, as follows:

Defendants shall submit their brief no later than January 12, 2024; Plaintiffs shall submit their brief (if one is necessary) no later than January 19, 2024.

## CONCLUSION

**THEREFORE,** for the reasons discussed in this Memorandum Opinion and Order, the Court hereby **DENIES** Defendants' Motion to Exclude Testimony and Opinions of Plaintiffs' Experts (**Doc. 66**).

**FURTHERMORE**, the Court hereby **GRANTS IN PART** Plaintiffs' Motion to Exclude Testimony and Opinions of Defendants' Experts (**Doc. 67**).

**FURTHERMORE**, the Court hereby **DENIES** Defendants' Motion for Summary Judgment (**Doc. 65**).

**FINALLY**, the Court **RESERVES RULING** on the Plaintiffs' Motion for Sanctions (**Doc. 64**) pending supplemental briefing.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE