## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

**KRISTINA MARTINEZ**, as Personal Representative
of the **ESTATE OF DALE RAND ERICKSON**,
deceased, **LUCILLE HIGGINS, BRANDON ERICKSON,
MATTHEW ERICKSON, JONATHAN ERICKSON**, and
**BRIANNA ERICKSON**,

        Plaintiffs,

        v.                            No.  1:22-cv-00288-WJ-SCY

**CORRHEALTH, PROFESSIONAL LIMITED LIABILITY
COMPANY d/b/a CORRHEALTH, LLC**, a foreign limited
liability company, **BRUCE BOYNTON, MD**, **BARRY
SCHOOLEY-STANFORD, MSN, FNP-C, OAKLEY BLASDEL,
RN**, **KIMBERLY RICH-GAINEY, RN**, and **MYRA MARTINEZ,
LPN**, in their individual capacities as employees of CorrHealth,
Professional Limited Liability Company d/b/a CorrHealth, LLC,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART PLAINTIFFS' MOTION
## FOR DEFAULT JUDGMENT AND ATTORNEYS' FEES

**THIS MATTER** is before the Court following the Show Cause Order (**Doc. 144**), the

Show Cause hearing (**Docs. 147, 177, 187**), and the subsequent motions regarding default

judgment and attorneys' fees. For the reasons explained below, the Court **GRANTS** Plaintiffs'

request (**Docs. 170 & 186**) for entry of default judgment and an award of attorneys' fees **in part**—

insofar as these sanctions only apply to Defendant CorrHealth and Attorney Casey Kannenberg.

### BACKGROUND

Dale Rand Erickson died while incarcerated at the Sandoval County Detention Center

where Defendant CorrHealth provides health care services to inmates. Plaintiff Kristina Martinez,

as personal representative of Mr. Erickson's estate along with Mr. Erickson's surviving heirs, sued

CorrHealth and the individual medical providers who allegedly treated Mr. Erickson or who were working around the time of Mr. Erickson's death. The Court has jurisdiction based upon the federal question presented in the civil rights claim (asserting violations under the Eighth and/or Fourteenth Amendments pursuant to 42 U.S.C. § 1983). *See* **Doc. 1-2 at 62**.

What matters here, though, is the history of this litigation—and the way in which CorrHealth and defense counsel handled this case. Of note, Attorney Kannenberg has represented Defendant CorrHealth and the five individual Defendants since June 2022 (**Doc. 29**)—two months after this case was removed to federal court by his then-colleague at Sharuzi Law Group. Attorney Kannenberg's representation of all the Defendants continued after he left that firm and joined Jackson Kelly, PLLC (**Doc. 109**).

During the course of litigation, Defendant CorrHealth was sanctioned—and warned about future sanctions. There were issues with discovery. Filing deadlines were ignored. The trial was then continued at CorrHealth's request. All the while, Attorney Kannenberg—who represented all the Defendants (but primarily acted at CorrHealth's behest)—failed to comply with the Federal Rules, Local Rules, Court orders, and Rules of Professional Conduct. Accordingly, the Court has reluctantly concluded that additional sanctions are warranted.

\* \* \*

Consistent with the Amended Scheduling Order (**Doc 40**) and a pair of Joint Motions to extend (**Docs. 43 & 53**), pretrial motions were filed in April and May of 2023. Plaintiffs filed a Motion to Exclude (**Doc. 67**) expert testimony. Defendants filed a Motion for Summary Judgment (**Doc. 65**) and a Motion to Exclude expert testimony (**Doc. 66**). Plaintiffs also filed a Motion for Sanctions (**Doc. 64**). Over the next few months, Responses and Replies were filed. And then, in November 2023, the Court issued a Memorandum Opinion and Order: (1) denying summary

judgment, (2) denying Defendants' request to exclude, (3) granting, in part, Plaintiffs' motion to exclude, and (4) reserving ruling on the requested sanctions—following supplemental briefing. *See* **Doc. 101 at 1–2 & 22**. Defendants were ordered to submit briefing "no later than January 12, 2024," *id.* **at 22**, and Plaintiffs were provided until January 19, 2024, to submit briefing "if . . . necessary." ***Ibid.***

January 12, 2024, came and went. Defendants filed nothing.

In contrast to Defendants, Plaintiffs timely filed their supplemental briefing (**Doc. 107**) on January 19, 2024. On that same day, Plaintiffs' counsel also filed a Notice regarding a potential *Dunton*[1] conflict (**Doc. 108**). In the *Dunton* notice, Plaintiffs' counsel was signaling that there may be a conflict of interest with Attorney Kannenberg representing all the Defendants.

There were no filings in February.

Then, in March 2024, Attorney Kannenberg filed a change of address (**Doc. 109**) because he was "no longer affiliated with the Sharuzi Law Group, Ltd." *Id.* **at 1**. Per this filing, Attorney Kannenberg gave notice that he was now practicing law with the firm of Jackson Kelly, PLLC, in its Denver office. *Id.* Attorney Kannenberg represented in his filing that he would continue representing all the Defendants. *Id.* The next day, Attorney Jacqueline Sharuzi withdrew "as counsel on behalf of Defendants, CorrHealth, Professional Limited Liability Company d/b/a CorrHealth, LLC, Bruce Boynton, MD, Barry Schooley-Stanford, MSN, FNP-C, Oakley Blasel, RN, Kimberly RichGainey, RN, and Myra Martinez, LPN." **Doc. 110 at 1**.

In May 2024, this Court filed an Order requiring Defendants to respond to the *Dunton* notice (**Doc. 114**). The Court also issued its Memorandum Opinion and Order (**Doc. 115**) granting Plaintiffs' request for spoliation sanctions. In that Opinion, the Court explained that CorrHealth's

---

[1] *See Dunton v. Cnty. of Suffolk, N.Y.*, 729 F.2d 903 (1984) (explaining potential conflicts between defense of a municipality and its employees in § 1983 actions).

admission to losing staffing and training records—which CorrHealth had a duty to preserve—warranted spoliation sanctions. *See* **Doc. 115 at 3–4** (citing **Doc. 72 & 74-14**). The Court reasoned that: (1) Plaintiffs were prejudiced by the loss of these records, (2) CorrHealth interfered with the judicial process, (3) CorrHealth was culpable for the discovery violation, and (4) spoliation sanctions were necessary. *Id.* **at 4–5**. The Court also warned Defendants and their counsel that further violations may result in "additional sanctions—including entry of default judgment." *Id.* **at 2 & 5**.

On May 22, 2024, Defendants through counsel, Attorney Kannenberg, filed their response to the *Dunton* notice (**Doc. 116**). Attorney Kannenberg explained there was "no actual material conflict" in the joint representation. *Id.* **at 2**. He further stated, "there is nothing at all that would suggest that Defendant CorrHealth and/or any of the individual Defendants has maintained a legal position that is contrary to or at odds with that of another CorrHealth Defendant." *Id.* Attorney Kannenberg explained the joint representation was in conformity with the Rules of Professional Conduct. *See id.* **at 3–4**. Additionally, Attorney Kannenberg stated, "[i]f there should be a jury verdict in excess of the policy limits, even an award of punitive damages against any of the individual Defendants that exceeds the policy, Defendant CorrHealth intends to satisfy any such award on behalf of the individual Defendants." *Id.* **at 3**.

On June 3, 2024, Attorney Kannenberg filed a motion for reconsideration of the Court's spoliation sanctions (**Doc. 118**). In this Motion, counsel explained that "Plaintiffs and Defendants had worked together on an Unopposed Motion for Defendant CorrHealth to file a Supplemental Brief Out of Time." *Id.* **at 2**. But, before Attorney Kannenberg finalized the pleading, "the Court issued its Order." *Id.* On June 13, 2024, the Court denied Defendants' Motion for Reconsideration. *See* **Doc. 121**. The Court concluded that Attorney Kannenberg's proffer of an intent to file a

responsive pleading was an insufficient basis for reconsideration. *Id.* at 2.

In August 2024, the Court docketed an Order scheduling the case for trial on November 12, 2024 (**Doc. 122**). Defendants then filed a motion to continue—which was opposed, in part. *See* **Docs. 123 & 126**. Defendants requested a continuance until December 2024, February 2025, or March 2025. *See* **Doc. 123 at 2**. For their part, Plaintiffs opposed a continuance beyond December 2024. *See* **Doc. 126 at 1–2 & 5**.

Footnote 1 of Defendants' motion for a continuance filed by Attorney Kannenberg deserves some further discussion (as it will prove important later). While requesting a continuance of the trial, on September 13, 2024, Attorney Kannenberg stated:

> Note that it is anticipated that Defendant CorrHealth will be bringing on new counsel from another law firm to participate in the trial in this matter. Defendant CorrHealth is not requesting the relief herein for purposes of delay, but rather because of the scheduling conflicts of counsel of record while Defendant CorrHealth determines what attorney personnel will be participating in the trial. In the interim, the undersigned counsel has been authorized to represent that the proposed dates in this Motion work for Defendant CorrHealth's new counsel.

**Doc. 123 at 3 n.1**. As the quote demonstrates, only "Defendant CorrHealth" was listed. And it was only "anticipated" that CorrHealth would bring on new trial counsel.

The Court docketed a telephonic status/scheduling conference (**Docs. 124 & 125**) to resolve these scheduling issues. On September 26, 2024, Plaintiffs' counsel entered their appearances for the record. And so did Attorney Kannenberg—on behalf of all Defendants. *See* **Doc. 127**; *see also* **Doc. 142 at 3** ("This is Casey Kannenberg on behalf of the Defendant CorrHealth and the individual CorrHealth medical providers. And that's it for the Defendants."). In fact, Attorney Kannenberg was the only attorney appearing on behalf of all the Defendants. The Court then asked counsel if "December the 3rd, running through Thursday, December the 12th" worked for resetting the trial? **Doc. 142 at 5**. Plaintiffs' counsel said "Yes, that works." *Id.* And

Attorney Kannenberg said "Yes, Your Honor, that works perfectly." *Id.*[2] Moreover, at no time during the September 26, 2024, telephonic hearing did Attorney Kannenberg alert the Court that he would not be representing Defendants at trial or disclose the lawyers who would be representing Defendants.

On September 27, 2024, based on the representations stated on the record by Plaintiffs' counsel and Attorney Kannenberg at the telephonic status/scheduling conference, the Court filed an Amended Order setting trial on the merits for December 2024 (**Doc. 128**).

On September 30, 2024, Attorneys Alexandra Ah Loy and Jason Hendren of the Firm of Hall Booth Smith entered an appearance on behalf of all Defendants (**Doc. 129**).

Attorney Kannenberg moved to withdraw as counsel (**Doc. 133**) on November 5, 2024. Plaintiffs' counsel responded—noting opposition—if this withdrawal would result in another continuance. *See* **Doc. 136**. Attorney Kannenberg's motion to withdraw was not granted, *see* **Doc. 144 at 8**, because he failed to comply with the local rules (and because of the Court's concerns over his misrepresentations during the course of this litigation).

Shortly thereafter, Attorney Chance[3] Holland entered his appearance on behalf of the individually named Defendants (**Doc. 137**). This filing occurred on the same day that Attorneys Ah Loy and Hendren moved to withdraw from representing the individual Defendants (**Doc. 138**).

Then, on November 14, 2024, the individually named Defendants filed an Emergency Motion to Continue the jury trial (**Doc. 143**). As grounds, counsel attached three exhibits wherein

---

[2] The December 3-12, 2024, trial dates also worked for the Court. The undersigned judge, like the other district judges in the District of New Mexico, preside over trial dockets consisting primarily of criminal cases given the District of New Mexico's status as a southwest border court and given the large volume of Indian Country felony cases filed in the District of New Mexico. Consequently, scheduling a complex civil case with multiple parties for nearly a two week jury trial can be extremely challenging.

[3] Attorney Holland's entry of appearance lists his name as "B. Chance Holland." The Court refers to him here as Chance Holland because when he entered his appearance orally on the record, he introduced himself as "Chance Holland." *Compare* **Doc. 137 at 2**, *with* **Doc. 177 at 48**.

the individual Defendants explained they had no idea the case was still ongoing or that trial had been set. *See* **Docs. 143-1, 143-2, 143-3**. It turns out that Attorney Kannenberg had not contacted or had any communication with the individual Defendants since March 2023. *See* **Doc. 187 at 97**.

Based on this eleventh hour revelation, the Court filed an Order to Show Cause (**Doc. 144**). The Court explained it was entertaining the idea of entering default judgment and awarding attorneys' fees as a sanction. This Order was consistent with the Court's previous admonishment to Defendants about the possibility of sanctions for failure to comply with rules or deadlines. *See* **Doc. 144** (citing **Doc. 115 at 5**); *see also* **Doc. 101 at 16–17** (warning Defendants about sanctions under Rule 16); *cf.* **Doc. 114** (ordering Defendants to respond).

Ultimately, the jury trial was vacated (**Doc. 145**) and a Show Cause hearing was scheduled (**Doc. 147**) for December 10, 2024. The Court had significant concerns over whether the five individual Defendants had conflict-free counsel as well as notice about the lawsuit and trial. The Court ultimately concluded that it could not, in good conscience, keep the trial date because of the due process concerns surrounding the individual Defendants and at that time, the Court did not want to sever for separate trial the individual Defendants from CorrHealth.

In response to the Court's Order to Show Cause, the parties filed their responses. *See* **Docs. 157, 158, 159, 161, 162, 163, 165, 166, 167, 168, 170**.

At the hearing, new defense counsel entered their appearances.[4] Attorney Kannenberg testified under oath at the December 10, 2024, hearing and was extensively questioned on direct

---

[4] All five of the individually named Defendants had new (and separate) counsel enter appearances on their behalf. *See* **Doc. 177 at 67**. Attorney Chance Barnett now represents Dr. Bruce Boynton (**Doc. 146**). Attorney Scott Sweeney now represents Kimberly Rich-Gainey (**Doc. 160**). Attorney Carla Williams now represents Oakley Blasdel (**Doc. 151**). Attorney Matt Rappaport now represents Myra Martinez (**Doc. 150**). Attorney Christina Brennan now represents Barry Schooley-Stanford (**Doc. 153**). Attorney Michelle Lalley Blake now represents CorrHealth (**Doc. 152**). Attorney Briggs Cheney now represents Casey Kannenberg. And Attorney Spring Schofield now represents Jackson Kelly, PLLC (**Doc. 156**).

and cross-examination. Plaintiffs' counsel requested default judgment and attorneys' fees and counsel made arguments for—and against—the imposition of such sanctions.

## LEGAL STANDARD FOR SANCTIONS

The ability to impose sanctions arises from the Federal Rules of Civil Procedure, federal statutes and the Court's inherent authority to control its own docket and to efficiently adjudicate cases or controversies properly before the Court.

Under Rule 11, a party may be sanctioned for making improper or false representations to the Court. *See* Fed. R. Civ. P. 11(b) & (c). Federal Rule 16(f) permits sanctions when an attorney: fails to appear, is unprepared, or fails to obey orders. And Rule 37 provides a basis for sanctions for discovery violations.

There is also a statutory basis for sanctions. *See* 28 U.S.C. § 1927. That law provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Essentially, this statute was designed to sanction attorneys who intentionally, recklessly, or indifferently disregard their duties to the Court. *See Obeslo v. Empower Cap. Mgmt., LLC*, 85 F.4th 991, 1005 (10th Cir. 2023).

Lastly, this Court has the inherent power to impose sanctions if a party acts in bad faith or delays/disrupts litigation. *See ORP Surgical, LLC v. Howmedica Osteonics Corp.*, 92 F.4th 896, 921 (10th Cir. 2024); *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015). A court is not required to consider "sanctions under the federal rules before . . . invok[ing] its inherent powers." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 858 (10th Cir. 2018). Rather, "a court may assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46

(1991) (cleaned up). In fact, a court may rely on its inherent powers **even if** the Federal Rules permit sanctions for the same conduct.

Here, each and every basis for sanctions comes into play.

### PRIMER ON INSURANCE DEFENSE

The tripartite[5] relationship between insurer, insured, and insurance defense counsel is unique—and conflicts of interest are an "inevitable hazard" in insurance defense practice. Douglas R. Richmond, *Emerging Conflicts of Interest in Insurance Defense Practice*, 32 TORT & INS. L.J. 69, 86 (1996).

When an attorney is retained by an insurance company to represent its insured, the insurance company pays the legal fees incurred in representing the insured. Nevertheless, the insured is the client to whom the lawyer's duty of loyalty is owed (regardless of the terms of any retention agreement the lawyer may have with the insurance carrier). *See Armijo v. Flansas*, No. 17-cv-665, 2017 U.S. Dist. LEXIS 198767, at *12–13 (D.N.M. Dec. 4, 2017) (Johnson, J.) ("An attorney hired by an insurer under a duty to defend is generally the insured's attorney." (citation omitted)); *Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, No. 10-cv-137, 2011 U.S. Dist. LEXIS 37816, at *57 (D.N.M. Mar. 30, 2011) ("The duty of the lawyer is to the insured, and not to the insurer." (citing MODEL RULES OF PRO. CONDUCT r. 1.7(a) (AM. BAR ASS'N)); *see also* N.M. Bar Ethics Advisory Comm. Op. 2000-2 ("[W]hen a lawyer is hired by the insurer to represent its insured, the lawyer's primary duty of loyalty is to the insured, not the insurer."); CBA Ethics

---

[5] *See* Aviva Abramovsky, *The Enterprise Model of Managing Conflicts of Interest in the Tripartite Insurance Defense Relationship*, 27 CARDOZO L. REV. 193, 199 (Oct. 2005) ("[T]he tripartite relationship increases the risk that the attorney's long-term retention will place the lawyer's own pecuniary self-interest in conflict" with that of his client); Joseph Regalia & V. Andrew Cass, *Bringing Counsel in from the Cold: Reconciling Ethical Rules with the Quagmire of Insurance Defense Practice*, 48 N.M. L. REV. 452, 487–88 (2018) ("[T]he tripartite relationship among insured, insurer, and defense counsel often creates the possibility of a conflict of interest.").

Comm. Formal Op. 91 (Jan. 1993), *add.* (2013); Brooke Wunnicke, *The Eternal Triangle: Standards of Ethical Representation by the Insurance Defense Lawyer*, 31 FOR THE DEFENSE 7 (Feb. 1989); ABA Informal Opinion 1476 (1981) (asserting that "[w]hen a liability insurer retains a lawyer to defend an insured, the insured is the lawyer's client"). It is well-established that a lawyer designated to defend the insured—by and through the employer's insurer—has a lawyer-client relationship with the insured.

### DISCUSSION

Throughout the course of this litigation, Attorney Kannenberg's conduct fell well below the ethical, professional, and competency standards of attorneys admitted to practice in the United States District Court for the District of New Mexico. First came the discovery sanctions. Then deadlines were ignored. Attorney Kannenberg's own testimony established that he did not communicate with five of his six clients—the individual Defendants—for over a year. Notwithstanding the lack of communication with the individual Defendants, Attorney Kannenberg represented to the Court and to Plaintiffs' counsel that the December 2024 trial setting would work for all the Defendants. Ultimately, the Court finds and concludes that sanctions are warranted against CorrHealth and Attorney Kannenberg, but not the individual Defendants.

This may seem odd. Why should CorrHealth be on the hook, but the individual Defendants escape unscathed? The reasons are plenty.

At the case's inception, CorrHealth failed to timely answer the Complaint. *See* **Doc. 64-1**. This delayed litigation. And, as discussed in a previous Opinion, CorrHealth spoliated (lost) evidence. *See* **Doc. 115**. This further prejudiced Plaintiffs. But what sticks out most is that CorrHealth and Attorney Kannenberg were in lockstep. Based on the evidence presented, Attorney Kannenberg routinely talked to the insurance provider (not his client) and CorrHealth employees,

but not those he represented. Mary Zold and Tim Hammond were Attorney Kannenberg's "points of contact" at CorrHealth. *See* **Doc. 177 at 41–42**. They were kept apprised of the case status. The Motion to Continue (**Doc. 123**) was vetted through the insurance carrier. **Doc. 177 at 21**. Even the *Dunton* response was run by Tim Hammond at CorrHealth. *See id.* **at 6–7**. Yet, the individual Defendants, Attorney Kannenberg's clients, were left in the dark.

* * *

The Court now endeavors to lump together the sanctionable conduct (and, in so doing, include references to the Rules of Professional Conduct).

## I. Discovery Sanctions — Strike Number 1

The Court previously laid out Defendants'[6] discovery missteps. *See* **Doc. 101 at 16–21**. First, Defendants filed untimely objections to Plaintiffs' discovery. *See id.* **at 16** (citing **Docs. 64 & 64-7**). The Court struck these objections for noncompliance with the scheduling order. *See* **Doc. 101 at 17** (citing Fed. R. Civ. P. 16(f)). The Court explained, "[f]ailure to adhere to a scheduling order" can result in "sanctions."

Second, Defendants did not supplement their expert disclosures in accordance with Rule 26(e). Consistent with the sanction provided in Rule 37(c)(1) for failure to supplement under Rule 26(a), the Court struck Defendants' untimely supplements. *See* **Doc. 101 at 17–18 & nn. 7 & 8**. This was Defendants' second missed deadline.

Finally, Plaintiffs requested spoliation sanctions. *See* **Doc. 83**. This request came after CorrHealth admitted in its Response that some records were "no longer available." **Doc. 101 at 20** (quoting **Doc. 74-14**). Because of outstanding factual issues, the Court ordered additional briefing

---

[6] Although the Court references "Defendants," what follows are the acts and omissions of Attorney Kannenberg and CorrHealth—even though some of these filings were on behalf of all Defendants. As the Show Cause evidence (including Attorney Kannenberg's own testimony) makes clear, the individual Defendants were left in the dark.

on the issue of spoliation. *See* **Doc. 101 at 21–22**. And, as stated earlier, Defendants were ordered to submit their brief by January 12, 2024. **Doc. 101 at 22**. That deadline came and went with no filing. Defendants' noncompliance with Court deadlines proved habitual. After providing Defendants "[n]early six months," **Doc. 115 at 1**, to respond, the Court filed its Memorandum Opinion and Order—granting Plaintiffs' request for spoliation sanctions.

In that Opinion, the Court: "warn[ed] Defendants' counsel that if further evidence of discovery violations is uncovered in this case, additional sanctions—including entry of default judgment—may be warranted. The same holds true if Defendants fail to comply with future Court orders or deadlines." **Doc. 115 at 2**. At the end of the opinion (bolded and in all caps), the Court stated: "**Defendants are hereby advised that this Memorandum Opinion and Order serves as a WARNING that that any subsequent violations of this Court's Orders or Rules may result, *sua sponte*, in SANCTIONS INCLUDING ENTRY OF DEFAULT JUDGMENT WITHOUT FURTHER NOTICE.**" *Id.* **at 7–8**.

Defendants accumulated three strikes for sanctionable conduct during the discovery phase alone. *See* Fed. R. Civ. P. 16 & 37.

## II. Missed Deadlines — Strike Number 2

Defendants routinely missed deadlines for discovery and for expert witnesses. But also, for motions. The Federal Rules authorize sanctions against CorrHealth for such derelict litigation conduct.

So, too, does § 1927. Attorney Kannenberg multiplied these proceedings by failing to meet timelines and deadlines. His actions are sanctionable—and justify an Order requiring him to personally pay attorneys' fees.

12

### III. Professional Responsibility and Adherence to the Local Rules — Strike Number 3

#### A. Communication with clients

Evidence shows that Attorney Kannenberg did not contact the individual Defendants for over a year. *See* **Doc. 187 at 97** (Attorney Kannenberg agreed, under oath, that he had not contacted any of the individual Defendants since March 2023) ; *see also* **Docs. 143-1, 143-2, 143-3**. This action (or inaction) violates New Mexico's Rules of Professional Conduct ("NMRA") § 16-104. This Rule explains that "A lawyer **shall** . . ." regularly communicate with his client. *See In re Owen*, 2013-NMSC-035, at ¶ 18, 306 P.3d 452 (N.M. 2013). Attorney Kannenberg violated this mandate when he ignored the individual Defendants from early 2023 until the fall 2024. These Defendants were under the impression the case was dismissed or settled—and, moreover, were completely unaware that the case was set for trial. *See* **Docs. 143-1 at ¶¶ 5–6**; **Doc. 143-2 at ¶¶ 3– 4**; **Doc. 143-3 at ¶¶ 3–5**.

Plus, for whatever it's worth, there is no evidence that Attorney Kannenberg informed the individual Defendants he moved to another law firm. *See* NMRA § 16-109, cmt. 4. There is no evidence that the individual Defendants were "reasonably assured that the principle of loyalty" was not compromised by this move to a new firm. *Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, at ¶ 18, 292 P.3d 466 (N.M. 2012).

In the undersigned's view, Attorney Kannenberg's abject failure to update the individual Defendants on the status of the case is disturbing. A lawyer "cannot leave it to the client to initiate communication and still satisfy his obligations under Rule 16-104." *In re O'Brien, Esq.*, 2001-NMSC-025, at ¶ 18, 130 N.M. 643, 29 P.3d 1044 (N.M. 2001). The attorney-client relationship is built on "trust and confidence." *Van Orman v. Nelson*, 1967-NMSC-069, at ¶ 57, 78 N.M. 11, 427 P.2d 896 (N.M. 1967). "Clients cannot be left floundering with no direction and

no communication." *In re O'Brien, Esq.*, 2001-NMSC-025, at ¶ 18. Yet that's exactly what happened here.

* * *

In an effort to explain his actions, Attorney Kannenberg testified that as of August 21, 2024 (**Doc. 167 at 3**), he no longer represented Defendants. *See* **Doc. 187 at 104** ("I had been terminated on August 21st."). It follows then (in his mind), that he "could not ethically contact the CorrHealth Defendants" after his termination. *Id.* **at 4**. The Court strenuously disagrees.

Attorney Kannenberg testified that he "had been terminated by the CorrHealth Defendants and by Aspen [Insurance]." **Doc. 187 at 71**. Assuredly, CorrHealth was aware of this decision. But the individual Defendants were not. And Attorney Kannenberg did not inform his other clients— the five individual Defendants—that he was terminated (because he thought it was unethical to communicate with them). *See* **Doc. 187 at 66 & 130–31**. That is not accurate. When representation ends, a lawyer must take steps practicable to protect the client's interests—such as "giving notice to the client of the termination." Restatement (Third) of the Law Governing Lawyers § 33(1); *see* NMRA § 16-116(D). Based on the record, the Court finds that Attorney Kannenberg was required to inform—and should have so informed—the individual Defendants that his representation ended.

Attorney Kannenberg was also obligated to ensure an "orderly termination." *Duran v. Home Depot USA, Inc.*, No. 13-cv-608, 2015 U.S. Dist. LEXIS 193828, at *8 (D.N.M. Mar. 12, 2015) (Johnson, J.). In practice, this means he should have surrendered the client file expeditiously. *See In re Lally*, 1999-NMSC-003, at ¶ 10, 126 N.M. 566, 973 P.2d 243 (N.M. 1999); *see also Schmidt v. Bull Attys., P.A.*, No. 21-cv-1036, 2022 U.S. Dist. LEXIS 202681, at *9 n.17 (D. Kan. Nov. 7, 2022) (explaining former counsel violates Rule 1.16(d) when failing to "timely forward" a client's file). The transition of the client files to new counsel was not done orderly or

14

expeditiously.

According to Attorneys Ah Loy and Hendren (**Doc. 138**), as of November 12, 2024, Attorney Kannenberg had not forwarded them the complete case file. ***Id.* at ¶ 3**; *see also* **Doc. 159 at 4 n.4**; **Doc. 187 at 185**. However, Attorney Kannenberg claims he "undertook actions intended to help facilitate a smooth transition of the file." **Doc. 167 at 14**. Efforts to timely forward the file should have taken place by the end of August or at some point in early September. Attorney Kannenberg should not have taken three months to transfer a file—especially when a firm trial date was set.

The Court—after reviewing all the filings and considering the testimonial evidence—finds that Attorney Kannenberg's transfer of client files was dilatory. So dilatory, in fact, that this conduct violated his ethical obligation to ensure an orderly termination of the representation of his clients and a timely transfer of the client files to new counsel.

### B. Candor to the Court

Attorney Kannenberg argues his representation "ended on August 21, 2024." **Doc. 167 at 3**. However, the electronic docket in this case is devoid of any such notice. The Court was not made aware of the fact he was a place-holder attorney. And, quite frankly, Attorney Kannenberg was not allowed to appear in a limited manner under the local rules (at least not without prior approval). *See* D.N.M.LR-Civ. 83.4(c) (citing NMRA § 16-303(E)).[7] Yet, even if Attorney Kannenberg was acting in a limited manner—subjectively (albeit, impermissibly)—he was obligated to "disclose to the tribunal the scope of representation." NMRA § 16-303(E). Again, there was no disclosure by Attorney Kannenberg to the tribunal that he had been terminated by

---

[7] The local rule states: "An attorney may not appear in a limited manner . . . except by Court order" and consistent with N.M. R. PROF'L CONDUCT 16-303(E). The New Mexico Rule says, "In all proceedings where a lawyer appears for a client in a limited manner, that lawyer shall disclose to the tribunal the scope of representation." NMRA § 16-303(E).

CorrHealth and was appearing in a limited manner.

At the Show Cause hearing, Attorney Kannenberg pointed to the footnote in his Motion to Continue. *See* **Doc. 123 at 3 n.1**. He argues that this footnote indicated his withdrawal "would likely be forthcoming." **Doc. 167 at 5**. But this footnote did not provide sufficient notice of anything. The footnote says, "it is ***anticipated*** that Defendant CorrHealth will be bringing on new counsel." **Doc. 123 at 3 n.1** (emphasis added). The language is couched as a mere possibility. And, based on the phrasing, it would only apply to the entity Defendant CorrHealth. There was absolutely nothing stated in the footnote or in the motion that even hinted at the fact that CorrHealth had terminated Attorney Kannenberg or that he would be withdrawing as counsel for all Defendants.

Attorney Kannenberg's footnote was not an attempt at good faith foreshadowing. Instead, it was a material omission. On one hand, he claims his representation ended on August 21, 2024. *See* **Doc. 167 at 3**. And on the other, he claims he was trying to "let [the Court] know" that new counsel is coming soon. **Doc. 177 at 21–22**. Despite his unequivocal explanation now, he did not inform the Court, opposing counsel, or the individual Defendants at the appropriate time.

This post-termination Motion to Continue was not the only time Attorney Kannenberg was less than forthright. On September 26, 2024, the Court held a telephonic status conference (**Docs. 124, 125, 127, 142**). There, Attorney Kannenberg appeared alone—on behalf of all Defendants. *See* **Doc. 142 at 3**. After entering his appearance, the Court asked: "Mr. Kannenberg, . . . you're representing all Defendants, right?" *Id.* **at 3–4**. Attorney Kannenberg said, "That's correct, Your Honor." *Id.* **at 4**. This answer—more than a month after he now claims his representation ended— was a misrepresentation. And if that wasn't enough, Attorney Kannenberg told the Court that a December trial date "works perfectly [for the Defendants]." *Id.* **at 5**. In light of the overwhelming

16

evidence that the individual Defendants were unaware of the trial setting, *see supra* ¶ III.A., this was another misrepresentation. *See* NMRA §§ 16-104 & 16-303.

"Lawyers are officers of the court and are always under an obligation to be truthful to the court." *Woodson v. Phillips Petrol. Co.*, 1985-NMSC-018, at ¶ 17, 102 N.M. 333, 695 P.2d 483, (N.M. 1985), *superseded by statute*, NMSA 1978 § 52-1-54(C) (1986). Candor requires truth. And misrepresentations can be "by either commission or omission." *In re Stein*, 2008-NMSC-013, at ¶ 35, 143 N.M. 462, 177 P.3d 513 (N.M. 2008).

Attorney Kannenberg, as the only counsel of record for Defendants, knew that neither Plaintiffs nor the Court were aware of any change in representation. *Cf.* NMRA § 16-304. Yet, he continued to hold himself out as all the Defendants' lawyer. Truth is not a matter of convenience.

The inescapable conclusion, then, is that Attorney Kannenberg misled the Court with these statements. The rules required Attorney Kannenberg to withdraw once he was discharged. *See* NMRA § 16-116(A)(3); *see also* Restatement (Third) of the Law Governing Lawyers § 33(2)(b) (explaining a lawyer must "take no action on behalf of a former client" and "give reasonable notice to those who might otherwise be misled that the lawyer lacks authority to act for the client"). His motion to withdraw was not timely and was not in compliance with the Rules of Professional Conduct or the local rules of the District of New Mexico.

\* \* \*

In an alternate universe—one where Attorney Kannenberg informed the Court promptly of his termination—the Court would have taken any number of steps to keep this case on track for trial. For starters, the Court would have ordered new counsel to enter their appearance. The Court would have ensured new counsel were participating in the scheduling conference. The Court would have inquired if new counsel reviewed the *Dunton* response. At the very least, if the Court was

aware of Attorney Kannenberg's August termination prior to the status/scheduling conference, then the Court would have docketed the trial further out or would have ordered briefing on whether the individual Defendants should be severed from Defendant CorrHealth for a separate trial because of the lack of notice. But instead, the November trial became a December trial and then the December trial was vacated. No doubt, this is prejudicial to Plaintiffs. (And immensely frustrating for the Court).

### C. Disregard for the Local Rules

In May 2024 (**Doc. 115 at 7–8**), the Court warned Defendants that "**. . . any subsequent violations of this Court's Orders or Rules may result,** *sua sponte*, **in SANCTIONS INCLUDING ENTRY OF DEFAULT JUDGMENT WITHOUT FURTHER NOTICE.**"

This warning—and the prior sanctions—proved insufficient. On November 12, 2024, less than a month before trial, Attorney Kannenberg moved to withdraw (**Doc. 133**). His request did not comply with the District's local rules. *See* D.N.M.LR.-Civ. Rule 7.1(a) (requiring the movant "must determine whether a motion is opposed"); D.N.M.LR-Civ. 83.3(b) (explaining an attorney "must file and serve on all parties, including the client, a motion to withdraw. The attorney must give notice in the motion that objections must be served and filed within fourteen (14) days from date of service of the motion and that failure to object within this time constitutes consent to grant the motion").

### D. Dunton *notice*

To be honest, the Court is not entirely sure who is at fault here. Maybe Attorney Kannenberg misunderstood what CorrHealth relayed to him (as some evidence shows). Or maybe CorrHealth changed positions (as other evidence shows). *Compare* **Doc. 182 at 2–4**, *with* **Doc. 181 at 2**. Maybe this conflict existed from the beginning. Maybe it didn't. Again, the Court notes

that there is case precedent and ethical guidance discouraging counsel from representing an entity and individuals in the same case, but there is no hard and fast rule prohibiting this type of multiple client representation.[8] For this reason, the Court ordered Defendants to file a response to Plaintiffs' *Dunton* Notice (**Doc. 114**).

On November 12, 2024, this *Dunton* conflict reared its head when the Hall Booth Smith Firm filed a Motion explaining there was "a conflict of interest." **Doc. 138 at 2**. Counsel explained the previous *Dunton* representations (**Doc. 116**) were "inaccurate" with respect to CorrHealth's ability and willingness to indemnify the individual Defendants. *Id.*

As expected, Attorney Kannenberg claims there was no actual conflict about "safety net agreement." *See* **Doc. 167 at 10–11**. In his view, one attorney could represent all the Defendants— and work out any indemnification later if an excess verdict was rendered. *Id.* It was not an actual conflict, but instead a potential conflict.

In the Court's view, Attorney Kannenberg's representation—that CorrHealth will cover any "jury verdict in excess of the policy limits" (**Doc. 116 at 3**)—placed the financial interests of the individual Defendants over the financial interests of CorrHealth. And his representation regarding a "unified defense" (*id.* **at 2**) theory failed to consider the potential impact on the individual Defendants' licenses if they were found liable. *See* **Docs. 161–166**; *see also* NMSA

---

[8] Numerous courts have held that dual representation of an entity and individual defendants is improper because they are potentially adverse. *See, e.g., Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Freemont*, 85 F.3d 489, 493 (10th Cir. 1996) (adopting *Dunton* conflict standard); *Casson Constr. Co. v. Armco Steel Corp.*, 91 F.R.D 376, 382 (D. Kan. 1980) ("The short answer . . . is that corporate counsel should not represent individual employees).

Also, the Court surmises that competent defense counsel would have known if the individual Defendants were or were not covered by CorrHealth's policy—up to, and including, excess coverage. In fact, this issue should have been resolved at the inception of the case and should not have been an issue that the Court had to order counsel to brief.

1978 § 41-5-27[9]; N.M. Admin. Code §§ 16.10.10.8 & 16.10.10.9(A). Attorney Kannenberg's representations in the *Dunton* response created a two-way street of concurrent conflicts of interest. *See* NMRA § 16-107 cmt. 8. Although Attorney Kannenberg claims "[t]he possibility there might be future claims by and between CorrHealth and the Individual Defendants is likely a waivable conflict," **Doc. 167 at 10**, this would still need full disclosure to all Defendants and a knowing waiver. *See* NMRA § 16-107(B)(4). There is nothing in the record showing that Attorney Kannenberg ever obtained any such waivers.

### E. Informed consent

Next, the Court points out another glaring omission by Attorney Kannenberg—*viz.*, obtaining informed consent.

The original state court Complaint (**Doc. 1-1**) was filed on March 19, 2021. No individual CorrHealth employees were specifically named in the suit—rather, Plaintiffs were suing "Jane Does 1–5." *Id.* at 4 ¶¶ 8 & 9. But then, in March 2022, Jacqueline Sharuzi responded to interrogatories (**Doc. 64-5**). In so doing, she named Dr. Boynton, Barry Schooley-Stanford, Oakley Blasdel, Kimberly Rich-Gainey, and Myra Martinez as employees of CorrHealth who were working during the time period of the instant lawsuit. *Id.* at 4 & 6–9.

Naturally, Plaintiffs filed a First Amended Complaint naming Dr. Boynton, Barry Schooley-Stanford, Oakley Blasdel, Kimberly Rich-Gainey, and Myra Martinez as Defendants. *See* **Doc. 1-2 at 1 & 4**. Plaintiffs' motion for leave to file a First Amended Complaint (**Doc. 14-25**) makes this point abundantly clear: "Based on the results of written discovery conducted to date, Defendants Bruce Boynton, MD, Barry Schooley-Stanford, MSN, FNP-C, Oakley Blasdel,

---

[9] This statute requires the Court to forward to the appropriate licensing board, for determination of fitness to practice the profession, the name of any individual health care provider against whom judgment is entered or, in the case of vicarious liability, the name of any health care provider whose negligence caused the injury.

RN, Kimberly Rich-Gainey, RN, and Myra Martinez, LPN are substituted for Defendants Jane Does 1-5, as employees or agents of Defendant CorrHealth, LLC." *Id.* **at 2**. CorrHealth's attorney—then Jacqueline Sharuzi—was the reason that the individually named Defendants were added to the suit, by name.

In March, Jacqueline Sharuzi stated that Dr. Bruce Boynton was "involved in the provision or administration of health care to inmates" from March 20–23, 2019. **Doc. 64-5 at 3–4**. Then in April, she responded on behalf of Dr. Boynton (**Doc. 7**) and "denie[d]" that Dr. Boynton was a CorrHealth employee at the time of the incident. *Id.* **at 2**. Yet, the only reason Dr. Boynton was named in the lawsuit was because of Jacqueline Sharuzi's prior filing. Although Attorney Sharuzi has since withdrawn from the case, this conduct is problematic.

Despite this apparent factual inconsistency regarding Dr. Boynton's employment dates, after reviewing and analyzing the file, Attorney Kannenberg concluded "there was not a conflict of interest between CorrHealth and the Individual Defendants." **Doc. 167 at 6** (citing **Doc. 5**). In his view, the longer the case went on "it became even more clear" there was no conflict of interest. *Id.*

Attorney Kannenberg should have noticed this inconsistency with Dr. Boynton's employment dates. This should have been an indicator that, perhaps, the individual Defendants needed separate counsel. The fact Defendant Rich-Gainey (**Docs. 163 & 164**) and Defendant Blasdel (**Docs. 161 & 161-1**) were former employees of CorrHealth should have also given Attorney Kannenberg pause. But it didn't. Again, the lack of communication with the five individual Defendants proved problematic.

\* \* \*

The Court is not saying the representation "must [have] be[en] declined," NMRA § 16-107

cmt. 3, but informed consent was required. *See* NMRA § 16-108(F) (noting that "informed consent" is required when an attorney is being paid by a third-party). The record in this case demonstrates that Attorney Kannenberg's representation of the entity, CorrHealth, and the individual Defendants was on shaky footing from the inception of this case. Attorney Kannenberg should have been scrupulously careful. At minimum, an informed consent waiver should have been sought. *See* NMRA § 16-104(A) & (B).

There is nothing in the record to suggest that a waiver was obtained for a third-party paying the legal bills. *See* NMRA § 16-108(F). Nor was any waiver obtained regarding the potential conflicts. *See* NMRA § 16-107(B). Instead, Attorney Kannenberg represented CorrHealth and the individual Defendants from June 2022 onward without ever obtaining a waiver of informed consent.

## IV. Sanctions and *Ehrenhaus* Analysis

### A. CorrHealth and Attorney Kannenberg

When imposing sanctions, a court should consider: (1) the degree of actual prejudice; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; and (4) the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (listing factors); *see also Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

First, the record is abundantly clear that Plaintiffs have been prejudiced. In an earlier ruling, the Court determined Defendants' spoliation of discoverable material caused Plaintiffs to unnecessarily expend time and resources. *See* **Doc. 115 at 4**. Continuing (and then vacating) trial has the same result. Plaintiffs continue to suffer prejudice by having to unnecessarily expend time and resources. *See* **Doc. 170 at 32–33**. The fact that no trial setting currently exists is a result of the actions and inactions of Defendant CorrHealth and Attorney Kannenberg.

22

Several district courts have determined that "repeated failures to comply with court-imposed deadlines" warrant harsh sanctions. *Tanaka v. Univ. of N.M. Hosp.*, No. 04-cv-645, 2005 U.S. Dist. LEXIS 62788, at \*6 (D.N.M. May 31, 2005); *Gaedeke Holdings Vii, Ltd. v. Stamps Bros. Oil & Gas, LLC*, No. 19-cv-344, 2024 U.S. Dist. LEXIS 178689, at \*4–5 (W.D. Okla. Sept. 30, 2024); *Saiz v. Jerome*, No. 23-cv-35, 2024 U.S. Dist. LEXIS 188631, at 4–5 (D. Colo. May 17, 2024). To be sure, wasting an opposing party's "time, effort, and expense" are prejudicial. *Riviera Drilling & Expl. Co. v. Gunnison Energy Corp.*, 412 F. App'x 89, 93–94 (10th Cir. 2011) (unpublished) (Hartz, J.). It is worth noting that *Ehrenhaus*, the seminal case on sanctions, involved a district court dismissing a complaint with prejudice due—in part—to a party's failure to adhere to the scheduling order. This first factor favors default judgment. Especially so, given that a client is "liable for the acts and omissions of his counsel." *LaFleur v. Teen Help*, 342 F.3d 1145, 1152 (10th Cir. 2003) (Kelly, J.) (citing *Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1189 (10th Cir. 2002) (Hartz, J.)).

Second, the Court finds that Defendant CorrHealth and Attorney Kannenberg interfered with the judicial process. Deadlines were ignored. And not just for discovery—but also for motions and pretrial deadlines. *See Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993) (finding interference when counsel "ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party"). Although Attorney Kannenberg was the mouthpiece, the Court agrees that "both CorrHealth and its insurer were intimately involved in directing the case." **Doc. 170 at 37**.[10]

Attorney Kannenberg represented CorrHealth **and** the five individual Defendants. Yet, as

---

[10] Plaintiffs go on to make a slippery slope argument—explaining "if Defendants could simply switch attorneys to avoid trial . . . then any Defendant could . . . perpetually continu[e] their trials in every case." **Doc. 170 at 37**. This overlooks the fact that a Judge must approve an attorney's motion to withdraw. But even so, the point is taken.

established above, he did not communicate very often with the individual Defendants. He did, however, communicate "regularly" with CorrHealth representatives. **Doc. 187 at 141**. To be sure, it is not best practice for an attorney to communicate to a client's former employer instead of the client. But that is what happened here. Attorney Kannenberg relied upon CorrHealth for all client communications. *See* **Doc. 187 at 113 & 132–33**. And those who "act through agents are customarily bound by their agents' mistakes." *Gripe*, 312 F.3d at 1189. As such, CorrHealth also interfered with the judicial process by acting as the intermediary for client communication.

Third, Defendant CorrHealth and Attorney Kannenberg are culpable. Obviously, the deadlines and misrepresentations are significant. The record reveals no justifiable excuse for such litigation conduct. But also, whatever *Dunton* issue exists (or doesn't exist), the representations in the filing (**Doc. 116**) were the collective brainchild of CorrHealth and Attorney Kannenberg. *See* **Doc. 167 at 16** (citing **Ex. F & G**); **Doc. 170 at 39–40**. To date, CorrHealth contends that it did not agree to indemnify the individual Defendants. *See* **Doc. 182 at 2–4**. But Attorney Kannenberg maintains the "representation was authorized." **Doc. 181 at 2**. Clearly, both cannot be true. And in the end, the Court agrees with Plaintiffs: CorrHealth's history of failing to comply with "court rules and deadlines is relevant to assessing their culpability," and their "pattern of misconduct . . . is indicative of greater culpability than a single, isolated incident." **Doc. 186 at 21**.

Finally, the Court contemplates the efficacy of lesser sanctions. So far, the Court provided Defendants with the opportunity to file supplemental briefing on the issue of whether sanctions should be imposed for spoliation of evidence. *See* **Doc. 101**. That deadline was ignored. *See* **Doc. 115 at 5**. The Court overlooked noncompliance with local rules when briefing on a motion to reconsider was filed. *See* **Doc. 121 at 1 n.1**. But subsequent filings and representations by Attorney Kannenberg and CorrHealth did not comply with the local rules or ethical rules. *See* **Docs. 123,**

**136, 142**. So, the trial date had to be continued. *See* **Doc. 128**. As trial approached, Plaintiffs' counsel continued to meet their pretrial deadlines (**Docs. 130, 131, 141, 148, 149**) while CorrHealth did not. Ultimately, the reset trial date was vacated for all the reasons explained so far. *See* **Doc. 145** (citing **Doc. 144**).

The purpose of sanctions is to bring the offender into compliance. Prior sanctions in this case have not worked. Striking evidence (**Doc. 101 at 17**), ordering responses (**Doc. 114**), limiting testimony (**Docs. 101 & 115**) and granting Plaintiffs' request for spoliation sanctions (**Doc. 115**) did not bring CorrHealth and Attorney Kannenberg into compliance.

The prior sanctions history in this case combined with the actions, or inactions, by CorrHealth and Attorney Kannenberg create an extraordinarily unique situation justifying entry of default judgment.[11] As Hall Booth Smith admits, the "procedural posture at which this case finds itself is unfortunate." **Doc. 159 at 16**. Nevertheless, "Defendants and their counsel oppose both a default judgment and a fee award," but "none of them suggest any lesser sanctions as an alternative." **Doc. 170 at 43**. In the Court's view, no sanction short of default judgment would prove efficacious, here.

Attorney Kannenberg and CorrHealth made more than one single error. This Court cannot shut its eyes to the string of failures. CorrHealth and Attorney Kannenberg's year-long noncompliance with deadlines, misrepresentations, and delay tactics amount to willful misconduct. Their conduct is sufficiently willful to warrant default judgment. And there is no merit to the contention that such a sanction—as to CorrHealth—because of its counsel's conduct

---

[11] "Default judgment is . . . considered a harsh sanction." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). It is a "last resort." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993). As such, it should be used "when the adversary process has been halted." *Davis v. Kaiser*, 12 F. App'x 902, 904 (10th Cir. 2001) (unpublished) (citation omitted). And that's what happened here. The litigation is at a standstill because of CorrHealth and its (former) counsel.

imposes an unjust penalty. *See Gripe*, 312 F.3d at 1189; *cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962).

### B. The individual defendants are not culpable

Plaintiffs argue the individual Defendants showed "reckless indifference to the status of the litigation." **Doc. 170 at 40**. The Court disagrees.

When "the fault lies with the attorneys, that is where the impact of sanctions should be lodged." *In re Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984); *see also Smith v. United States*, 834 F.2d 166, 171 (10th Cir. 1987) (suggesting that the client and lawyer should not be treated as the same for purposes of sanctioning noncompliance). A represented party cannot be faulted when his attorney ghosts[12] him.

> None of the Individual Defendants were aware that this case was still in litigation, let alone set for a jury trial on December 3, 2024, before the undersigned first reached out to them. None of them had heard from their attorney in nearly two years. They should not be punished with a default judgment for their reliance on counsel to keep them apprised of significant case developments.

**Doc. 158 at 2**. Unlike CorrHealth, the individual Defendants were unaware of the status of the litigation. Unlike CorrHealth, they were not involved in the litigation decisions. Unlike CorrHealth, Attorney Kannenberg did not communicate with them. Thus, there is no legitimate basis in fact or in law to impose sanctions against the individual Defendants.

Additionally, as the Court noted at the hearing, imposing sanctions on the individual

---

[12] "Ghost" (or "ghosting") is a slang term for cutting off contact. One court used this language to describe an attorney who stopped communicating with a client. *See Iowa Sup. Ct. Atty. Disciplinary Bd. v. O'Brien*, 971 N.W.2d 584, 587 (Iowa 2022) ("This attorney disciplinary matter presents the curious, but unfortunately not unheard of, circumstance of a lawyer who inexplicably 'ghosts' his client in the middle of representation."). Other courts have used ghosting to describe cutting off contact, more generally. *See Paul v. Credit Collection Servs.*, No. 17-cv-4060, 2020 U.S. Dist. LEXIS 171678, at *2 (E.D.N.Y. Sept. 18, 2020) (explaining counsel filed a "ghost" complaint and "had absolutely no contact with his client"); *cf. Heup Song v. Fish*, No. 23-cv-392, 2024 U.S. Dist. LEXIS 103557, at *2 (M.D. Fla. June 11, 2024) (likening "ghost[ing]" to "ignor[ing]").

Defendants raises due process concerns (**Doc. 187 at 8**). "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). Prior to the Show Cause hearing, the Court could not reasonably conclude the individual Defendants had been heard (let alone properly represented). On this point, several courts have held the due process requirements for sanctions are higher when dealing with a client rather than an attorney. *See, e.g., Dial HD, Inc. v. Clearone Communs., Inc.*, 536 F. App'x 927, 929 (11th Cir. 2013) (unpublished and per curiam); *J.M. Cleminshaw Co. v. Norwich*, 93 F.R.D. 338, 351–52 (D. Conn. 1981); *see also Roadway Express v. Piper*, 447 U.S. 752, 767 n.14 (1980) (suggesting an attorney has fewer due process rights than his client); *cf. M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 873–74 (10th Cir. 1987) (requiring noncompliance by a party prior to imposition of sanctions). The Court finds these arguments about heightened due process for individual parties—particularly ones unaware of litigation—persuasive.

* * *

To the extent hindsight is informative, the Court notes that Attorney Kannenberg's last three filings (prior to his motion to withdraw) all begin with the same introduction: "Defendant CorrHealth, Professional Limited Liability Company, d/b/a CorrHealth PLLC ("CorrHealth"), by and through its counsel, JACKSON KELLY PLLC . . . ." **Docs. 116, 118, 123**. Imposing sanctions when the individual Defendants' attorney appears to have forgotten he represents them would be unjust.

### C. Attorneys' Fees

The issues in this case are many—but are all attributable to Attorney Kannenberg's actions/inactions while representing CorrHealth (some while at Sharuzi Law Group and the remainder at Jackson Kelly, PLLC).

In his filing, Attorney Kannenberg argues that the Court's earlier admonitions dealt with violations of Rules and deadlines—whereas the Show Cause Order dealt with Professional Responsibility concerns. *See* **Doc. 167 at 14–15** ("The issues raised by the current Order are, however, of a wholly different nature."). This argument appears to suggest that because these latest infractions involve professional responsibility concerns, the Court's previous warnings about sanctions are inapplicable. In essence, Attorney Kannenberg posits that sanctions cannot be imposed for various forms of misconduct. The Court disagrees.

Attorney Kannenberg also claims that § 1927 sanctions are inappropriate because he did not multiple or delay the proceedings. **Doc. 167 at 16**. Again, the Court disagrees. His lack of communication with the individual Defendants is a major reason the trial was vacated. And this lack of communication was, as mentioned, further compounded by his lack of candor to the Court.

Attorney Kannenberg represented the Defendants for over two years. During that time, he filed discovery and motions out of time. For nearly half of his duration as defense counsel, he did not speak with five of his six clients. He did not file a motion to dismiss Doctor Boynton. He did not evaluate any potential conflicts until the Court ordered a *Dunton* response and the veracity of his representations in said *Dunton* response subsequently became hotly contested. Finally, when his representation was terminated, Attorney Kannenberg: (1) kept the Court, the individual Defendants and Plaintiffs' counsel in the dark, (2) failed to comply with local rules, (3) failed to comply with New Mexico's Rules of Professional Conduct, and (4) slow-rolled the transfer of the case file.

Attorney Kannenberg multiplied the proceedings in an unreasonable way. As such, he is liable for attorneys' fees, costs, and expenses pursuant to § 1927.

\* \* \*

Although Plaintiffs believe that Hall Booth Smith should be on the hook, *see* **Doc. 170**, the Court does not. The Hall Booth Smith attorneys got involved in the case in late August or early September—during which time they were not in receipt of the full case file. *See generally* **Doc. 159**. Even so, they tried to keep the trial setting. *See id.* **at 5**. They reengaged in settlement talks. *See id.* **at 9**. Eventually, though, the Hall Booth Smith attorneys realized joint representation was not possible based off CorrHealth's position (or changed position) about excess coverage. *See id.* **at 7–8**. So, conflict counsel was brought on—in order to try and keep the trial setting.[13] As a result, this conflict attorney contacted the individual Defendants and, for the first time in this litigation, obtained informed consent waivers. *See* **Doc. 158 at 5–6**. And most importantly, the Hall Booth Smith attorneys brought the conflict of interest issues and lack of attorney communication issues with the individual Defendants to the Court's attention in a timely manner. *See* **Docs. 138 & 143**.

The Court appreciates that the Hall Booth Smith attorneys "gathered . . . information about what had actually happened in this case," and realized it was "ethically untenable for them to continue representing all of the Defendants." **Doc. 159 at 19**; *cf.* **Doc. 187 at 154–55 & 165**. Although the Plaintiffs were ultimately prejudiced, *see* **Doc. 187 at 156–57** (explaining "justice delayed is justice denied"), the Court does not find that the Hall Booth Smith attorneys interfered with the judicial process. Nor does the Court find them culpable. The *Ehrenhaus* factors weigh strongly against imposing sanctions against Attorneys Ah Loy, Hendren, Holland, and/or the Hall Booth Smith Firm.

The Court concludes that an award of attorneys' fees against Hall Booth Smith—and its attorneys—would be "unjust because the situation . . . was not due to any misconduct or fault" on

---

[13] As stated at the hearing, the Court is not sure the same firm should have undertaken representation of CorrHealth and the individual Defendants. *See* **Doc. 187 at 122–23**; *see also* **Doc. 181 at 4 n.3**; *but see* **Doc. 159 at 12**.

their part. **Doc. 159 at 20**; *see also* **Doc. 187 at 168** (finding there is no basis for sanctions against "the HBS law firm").

### V. Recapping the Disposition of the Outstanding Motions[14]

This Memorandum Opinion and Order resolves myriad filings. In an effort to be concise, but thorough, the Court now lists each filing (as well as the disposition):

- Attorney Kannenberg's Motion to Withdraw (**Doc. 133**) is **GRANTED**. He is, finally and formally, terminated as counsel for the Defendants.

- Plaintiffs' Response to Attorney Kannenberg's withdrawal (**Doc. 136**) is **DENIED as MOOT**. *See* **Docs. 144 & 145**.

- Attorneys Ah Loy and Hendren's Motion to Withdraw (**Doc. 138**) on behalf of the individual Defendants is **DENIED as MOOT**. *See* **Doc. 176** (granting withdrawal).

- The individual Defendants' Emergency Motion to Continue (**Doc. 143**) was previously granted. *See* **Doc. 145** (citing **Doc. 144**).

- Attorney Kannenberg and Jackson Kelly, PLLC's Motion (**Doc. 155**) and Amended Motion (**Doc. 157**) for *in camera* review are **GRANTED**—and were previously granted on the record. *See* **Doc. 187 at 168–69**.

- To the extent Attorney Chance Holland requests: (1) default judgment not be entered against the individual Defendants, and (2) that attorneys' fees not be assessed against Hall Booth Smith (specifically, Attorneys Ah Loy, Hendren, and Holland), his Motion (**Doc. 158**) is **GRANTED**.

---

[14] Some of these filings are traditional motions. Others are responses, replies, and supplemental briefings. The Court refers to them each as a "motion," though, because each one asks the Court to take some action. *See United States v. Bloate*, 655 F.3d 750, 757 (8th Cir. 2011) (Benton, J.) (explaining a "motion" asks the court to "consider" something—and thereby rejecting a definition of "'motion' so broad that any *filing* can be deemed a *motion*").

- Attorneys Ah Loy and Hendren's Motion (**Doc. 159**) is **DENIED** as to the entry of default judgment but is **GRANTED** with respect to not awarding attorneys' fees against Hall Booth Smith.

- Defendant Blasdel's Motion (**Doc. 161**) is **GRANTED**, insofar as she requests default judgment not be entered against her.

- For the same reasons, Defendant Martinez's Motion (**Doc. 162**) is **GRANTED**.

- Defendant Rich-Gainey's Motion (**Doc. 163**) is also **GRANTED**—to the extent she requests default judgment not be entered against her.

- Defendant Schooley-Stanford's Motion (**Doc. 165**) is **GRANTED**.

- Defendant Boynton's Motion (**Doc. 166**) requesting that default judgment not be entered against him is, likewise, **GRANTED**.

- Attorney Kannenberg's Motion (**Doc. 167**) is **DENIED in part**. Sanctions are warranted. But default judgment is only appropriate as to CorrHealth—not the individual Defendants.

- Plaintiffs' Motion (**Doc. 170**) is **GRANTED in part** and **DENIED in part**. Default judgment is warranted. But again, only as to CorrHealth—not the individual Defendants. Moreover, in granting attorneys' fees under § 1927, the Court also declines to award such fees against Hall Booth Smith or any of its attorneys.

- Attorney Kannenberg's Supplemental Motion (**Doc. 181**) is **DENIED**.

- CorrHealth's Supplemental Motion (**Doc. 182**) is also **DENIED**.

- Plaintiffs' Supplemental Motion (**Doc. 186**) is **GRANTED in part**. Default judgment and attorneys' fees are appropriate as to CorrHealth and Attorney Kannenberg, respectively. The Court **DENIES** Plaintiffs' requested disclosure of the privileged documents provided by Defendants and counsel.

**CONCLUSION**

Improper representations, failure to obey orders, and discovery violations were persistent. As such, sanctions are warranted under Federal Rules of Civil Procedure 11, 16, and 37. Rule 11 sanctions are appropriate because of the misrepresentations in various motions and filings. *See* **Docs. 116 & 118**. Rule 11 sanctions are also appropriate based on the delay and increased litigation costs associated with Attorney Kannenberg's motion to continue (**Doc. 123**). *See Collins v. Daniels*, 916 F.3d 1302, 1319–20 (10th Cir. 2019). Rule 16(f) sanctions are warranted because CorrHealth and Attorney Kannenberg failed to obey numerous court orders and deadlines. *See Gripe*, 312 F.3d at 1188; *cf.* Fed. R. Civ. P. 16(f) (citing Fed. R. Civ. P. 37).

Sanctions under § 1927 are necessary because the proceedings were unreasonably multiplied—at the hands of Attorney Kannenberg. *See Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221–22 (10th Cir. 2006).

Finally, the Court invokes its inherent power to impose sanctions based on the dilatory and disruptive nature of the litigation. *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). In no small part, failure to comply with the local rules of this Court provides a basis for sanction. *See Hand v. Walnut Valley Sailing Club*, 475 F. App'x 277, 279 (10th Cir. 2012) (unpublished). So, too, do Attorney Kannenberg's violations of the rules of professional responsibility. *See Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 717 (10th Cir. 2005).

**IT IS THEREFORE ORDERED** that default judgment is entered as to Defendant CorrHealth[15] **but not** as to the individually named Defendants. Future steps will include either: (1) a jury trial on damages, (2) a bench trial on damages, or (3) briefing and an evidentiary hearing for purposes of determining the appropriate award of damages. Either way, the Court shall schedule—

---

[15] The Court warned Defendants that sanctions—including default judgment—may be entered. Not once. Not twice. But three times. *See* **Doc. 101 at 19–22**; **Doc. 115 at 2–8**; **Doc. 144 at 7**.

by subsequent order—a hearing to determine the parties' proposed course of action to bring this case to resolution. If a jury trial on damages is sought, the Court may consider severing the trials for CorrHealth and the individual Defendants because the Court may have to reopen discovery and set new case management deadlines for the individual Defendants since liability and damage issues are still unresolved as to the individual Defendants.

**IT IS FURTHER ORDERED** that attorneys' fees are awarded to Plaintiffs against defense counsel Casey Kannenberg pursuant to 28 U.S.C. § 1927 and Fed. R. Civ. P. 11. The Court **ORDERS** Plaintiffs to submit a motion (or petition) for an award of attorneys' fees and costs within 30 days after entry of the instant Memorandum Opinion and Order. Plaintiffs' Motion, as well as any Responses and/or Replies, must conform with the requirements and time limits set forth in D.N.M.LR-Civ. 7 and 54.5.

        **IT IS SO ORDERED**.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE